[Civ. No. 18827.   First Dist., Div. One.   Apr. 29, 1960.]

FOREST M. HUNTER et al., Appellants, v. LEONARD D. ADAMS, as City Building Inspector, etc., et al., Respondents.

512

Eugene Harrah and Kalmen Y. Sapero for Appellants.

Russell Zaches, City Attorney (Monterey), for Respondents.

MOLINARI, J. pro tem.*—This is an appeal from a judgment discharging an alternative writ of mandamus and the denial of a petition for a peremptory writ of mandamus. The facts, as found by the trial court, are substantially as follows:

The appellant Jones is the owner of certain real property in the city of Monterey, and the appellant Hunter is the purchaser of said property pursuant to a written agreement of sale entered into on October 28, 1958. The said contract spe-

*Assigned by Chairman of Judicial Council.

cifically provided that the sale was conditioned upon the obtaining of a permit by Hunter for the erection of a motel on said property. Plans and specifications for said motel were presented to and approved by the city's architectural committee. On December 22, 1958, said plans and specifications were presented to respondent Adams in his capacity as building inspector for said city. Adams approved said plans and specifications as complying with the city's building code, but refused to issue a permit on the basis that he had been so directed by the city council, stating that a resolution had been passed by said council forbidding the issuance of permits in the area in which said property was located. The city council had on December 2, 1958, passed "Resolution No. 8936 C.S." which provided that from December 2, 1958, to and including the year 1959, no building permit was to be issued for the construction of any new structure upon any property or for any major improvement of any property located within a certain area which had been established as a redevelopment project by said council.

The city of Monterey is a city chartered pursuant to the Constitution of the State of California. Said charter provides that "the Council shall act in legislative matters by ordinances or resolutions, only." Prior to the adoption of the resolution in question the said city council had, on October 1, 1957, created an Urban Renewal Agency* pursuant to the Community Redevelopment Law of the State of California. After study the said agency recommended to the city council the establishment of an Urban Renewal Area and later within such area, an Urban Renewal Project. In February, 1958, application was made by the agency and the city council to the federal government for planning and grant monies for urban renewal purposes in the project area known as the "Custom House Renewal Area." On August 14, 1958, the agency requested the city council to freeze building permits in the project area, temporarily, while the comprehensive plan for said area was being developed. In October of 1958 the application to the federal government was amended requesting $110,000 in planning monies and $585,696 in grant monies and pledging $934,304 as the city's part of the redevelopment cost through its own and state credits. In November, 1958, the federal agencies advised the agency that said amended application would be approved shortly, and

---

*Hereinafter referred to as "the agency."

on December 8, 1958, it was approved. At the time Hunter submitted his plans to the architectural committee he knew that the proposed motel would be located in the project area but stated that he understood he would be entitled to the motel site in the area wherever it was located and that he would move it to another location on a site permitted under the Redevelopment Plan.

The trial court found further that the resolution in question was passed in order to preserve, temporarily, the status quo in the project area; that the planning monies will be used to make plans, studies, analyses, and appraisals having to do with the following, to wit: the determination of what areas are blighted; the potential highest uses of the land in the area; engineering studies for utilities and landscaping; relocation studies; appraisals for assessment purposes; market value of the land to be taken and its value after it is cleared and made available for the uses indicated in the proposed plan; and for the preparation of the Urban Renewal Plan specifying land uses, zoning, and building requirement ordinances. The trial court found also that no tentative plan for redevelopment of the project area has been completed and no public hearing has been held on such tentative plan; that the plans and specifications for the erection of the said motel are in compliance with the requirements of the existing building code and are not in violation of said code or existing zoning restrictions; that appellants cannot proceed lawfully to erect such structure without such permit; that the appellants have incurred great expense in preparing said plans and will incur further expense because of any delay in carrying out their intentions; that appellants are without a plain, speedy and adequate remedy in the course of law; that respondents refuse and withhold the issuance of such permit; and that such refusal deprives appellants of the beneficial use of said property; but that respondents have not acted in a discriminatory, arbitrary and confiscatory manner.

The question presented by this appeal is whether or not the passage of Resolution Number 8936 C.S. (freezing building permits) by the city council of Monterey was a proper exercise of police power by said council.

The appellants contend that there has been a taking or damaging of private property in violation of article I, section 14 of the California Constitution and without the proper exercise of police power; that no emergency exists for the

passage of the resolution; and that the resolution is in conflict with the Community Redevelopment Law.

The Community Redevelopment Law* is contained in sections 33000 to 33985, inclusive, of the Health and Safety Code. The act which then contained Health and Safety Code, sections 33000 to 33954, inclusive, was held constitutional in 1954 in the case of *Redevelopment Agency* v. *Hayes,* 122 Cal. App.2d 777 [266 P.2d 105]. In 1957 sections 33970 to 33985, inclusive, were added providing for "Urban Renewal." The act has been subject to several legislative enactments providing for the amendment and repeal of several of its sections. In 1959, and subsequent to the occurrences herein mentioned, that portion of the act having to do with the submission and adoption of "tentative plans" (Health & Saf. Code, §§ 33560 to 33574, inclusive) was repealed. This is significant to the present appeal because section 33574, with which the appellants claim the resolution in question is in conflict, has likewise been repealed. Section 33574 provided that after the adoption of the tentative plan "all applicants for building permits in the area shall be advised by the building department of the community that the site for which a building permit is sought for the construction of buildings or for other improvements is within a proposed redevelopment project area." The Legislature did, however, in 1959 enact section 33749 which provides that "after the adoption of a redevelopment plan for a project area by the legislative body, all applicants for building permits in the area for a period of two years thereafter shall be advised by the building department of the community that the site for which a building permit is sought for the construction of buildings or for other improvements is within a redevelopment project area."

A community development law similar to ours was held to be constitutional and a proper exercise of the police power by the United States Supreme Court (*Berman* v. *Parker,* 348 U.S. 26 [75 S.Ct. 98, 99 L.Ed. 27]); and in *Fellom* v. *Redevelopment Agency,* 157 Cal.App.2d 243, at page 247 [320 P.2d 884], the court said ". . . in the absence of an unconstitutional exercise of the powers granted under the Community Redevelopment Law the legislation is valid and constitutional."

The appellants do not attack the constitutionality of the act or of any of the powers granted thereunder. They contend

---

*Hereinafter referred to as "the act."

that the attempted implementation of the act by the enactment of the resolution in question was in conflict with the act and an improper exercise of the police power.

The act, after declaring the state's policy with reference to the redevelopment of blighted areas provides generally for the following steps necessary to effectuate its purposes by providing for: (1) the creation and composition of the Redevelopment or Urban Renewal Agency and delineation of its powers; (2) the designation of a redevelopment area; (3) the selection of a project area; (4) the formulation of a preliminary plan for the redevelopment of each project area; and (5) the preparation and adoption of a redevelopment plan after a public hearing on said plan. In the present case only steps 1, 2, and 3 had been accomplished at the time the resolution in question was adopted. It should be noted that while the act is a matter of state interest and its implementation a state objective, the local operation of the act is "made contingent upon determination by the local authorities that conditions there require its acceptance and operation." (*Housing Authority* v. *Dockweiler,* 14 Cal.2d 437, 446 [94 P.2d 794]; *Fellom* v. *Redevelopment Agency, supra,* 157 Cal.App.2d 243, at pp. 247 and 248.) The agency and the local legislative body have the authority to designate redevelopment and project areas, and to prepare and adopt preliminary and final redevelopment plans in implementation of the act. Courts have no right to interfere with such bodies unless the agency or body is exceeding its legislative powers, or unless its judgment or discretion has been abused or fraudulently or corruptly exercised. (*Babcock* v. *Community Redevelopment Agency,* 148 Cal.App.2d 38, 49 [306 P.2d 513].) In the present case there is no claim of fraud, collusion, bad faith, or abuse of discretion on the part of the agency or the city council. The contention is that the city council has exceeded its legislative powers in that it has improperly exercised its police power.

The first question for us to determine is whether or not the city council, as an administrative arm of the state in pursuing the state concern and effecting the legislative objective, has exercised a power not vested or recognized by the act. Specifically the claim is made that the resolution is in conflict with Health and Safety Code, section 33574, which at the time the resolution was passed provided that after the adoption of a tentative plan applicants for a permit to build

in a project area "shall be advised" that the building site is within a proposed redevelopment project area. As we have pointed out, section 33574 has been repealed. Appellants contend that this section has been replaced and superseded by section 33749 which contains substantially similar provisions. The latter section refers to the obligation to so advise permit applicants after the adoption of the final plan. Assuming that the 1959 amendment is applicable here because it is obviously the intent of the Legislature to provide that such notification be given by the local building department at the very least upon the adoption of the final redevelopment plan, we are, nevertheless, of the opinion that the resolution in question is not in conflict with said amendment or with the section which has since been repealed. The only duty imposed upon the local community by both of these sections is that the applicant for a permit "be advised." ▮ To advise means "to warn; to give notification or notice to; to apprise; to inform." (Webster's New Collegiate Dictionary, 2d ed., 1956.) ▮ "It is well settled that the mere fact that the state, in the exercise of its police power, has made certain regulations, does not prohibit a municipality from exacting additional requirements. So long as there be no conflict between the two, and so long as the requirements of the municipal by-law are not in themselves pernicious as being unreasonable or discriminatory, both will stand." (*Ex parte Snowden*, 12 Cal.App. 521, 525 [107 P. 724].) "A municipality may restrict and make additional qualifications in a field which general laws already cover." (*In re Borah*, 92 Cal.App.2d 826, 829 [208 P.2d 405]; see also *In re Hoffman*, 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75].) ▮ We see no such conflict in the present case. The state merely imposes upon the municipality the duty of giving warning or notification to applicants for building permits that the site for which a building permit is sought is within a redevelopment project area. The obvious intent of the Legislature is to put the applicant on notice that his building may be affected by the redevelopment plan and that it might be subject to being taken under the powers of eminent domain. The act goes no further. The permittee is free to continue, as far as the act is concerned, with the building or improvement and to incur whatever risks may be entailed. The resolution in question goes further; it withholds the granting of the permit altogether for a given period of time. ▮ The granting or denying of building permits is a "municipal affair" over

which a municipality, such as the city here, has supreme control. It is subject only to the rule that in granting or denying a permit it must use "sound discretion." (*Lindell Co.* v. *Board of Permit Appeals*, 23 Cal.2d 303, 311 [144 P.2d 4].)

The question presented here, then, is not one of conflict but rather one that concerns itself with reasonableness and discrimination. We are thus projected to the more important question as to whether the resolution in question was a proper exercise of police power. Or stated otherwise, did the council exceed its legislative powers when it sought to implement the act by the enactment of the questioned resolution?

In *Berman* v. *Parker, supra,* 348 U.S. 26, the United States Supreme Court, in discussing "what traditionally has been known as the police power," stated as follows on page 32: ". . . An attempt to define its reach or trace its outer limits is fruitless, for each case must turn on its own facts. The definition is essentially the product of legislative determinations addressed to the purposes of government, purposes neither abstractly nor historically capable of complete definition. Subject to specific constitutional limitations, when the Legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases the Legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, whether it be Congress legislating concerning the District of Columbia, [citations] or the States legislating concerning local affairs . . . ." Our own Supreme Court in *Miller* v. *Board of Public Works of the City of Los Angeles,* 195 Cal. 477, has spoken thusly on pages 484 and 485 [234 P. 381, 38 A.L.R. 1479] : "In short, the police power, as such, is not confined within the narrow circumspection of precedents, resting upon past conditions which do not cover and control present conditions obviously calling for revised regulations to promote the health, safety, morals, or general welfare of the public. That is to say, as a commonwealth develops politically, economically, and socially, the police power likewise develops, within reason, to meet the changed and changing conditions. What was at one time regarded as an improper exercise of the police power may now, because of changed living conditions, be recognized as a legitimate exercise of that power. . . . Thus it is apparent that the police power is not a circumscribed prerogative, but is elastic and, in keeping with the growth of knowledge and the belief in the popular mind of the need for its application,

capable of expansion to meet existing conditions of modern life, and thereby keep pace with the social, economic, moral, and intellectual evolution of the human race. In brief, 'there is nothing known to the law that keeps more in step with human progress than does the exercise of this power.' ''

As hereinbefore noted, the act itself is a proper exercise of the police power. The implementation of the legitimate purposes of the act by the enactment of reasonable local legislation not in conflict with the act would likewise be proper. It is claimed by appellants that the ''freezing of permits'' is unreasonable because there is no assurance that a redevelopment plan will ultimately be adopted—that the steps thus far taken are merely in the ''study'' and ''planning stage.'' An integral part of community redevelopment programs is that entailed in planning and study. Without such preliminary studies, planning, analyses, and appraisals, a balanced, integrated plan could never be developed. The act contemplates a redesigning of areas, changes in zoning regulations, new street patterns, parks, and shopping centers. The particular uses to be made of the land, the participation in the plan by the present owners of property in the area, the appraised value of parcels to be taken—all these, and many more considerations, enter into the fruition of the ultimate plan. As said in *Berman* v. *Parker, supra,* 348 U.S. 26, 35, ''community redevelopment programs need not, by force of the Constitution, be on a piecemeal basis—lot by lot, building by building.'' It is difficult for us to conceive how an intelligent integrated plan can be formulated if, while it is under study and planning, the area is in a constant state of flux with new building construction and improvements and the resulting change in property values and appraisals. It seems to us that the intelligent approach is that adopted by the council in the form of the resolution adopted here. Its object was to keep the status quo for a little over one year. Such an objective is a reasonable one in view of the legitimate objects of the over-all program. The good faith of the council in carrying out the program has not been challenged. To the contrary, the federal government in granting substantial monies towards the implementation of the program has recognized the good faith of the agency and the council.

We are fortified in our concluison by what we consider to be analogous situations. In *Miller* v. *Board of Public Works of the City of Los Angeles, supra,* 195 Cal. 477, an emergency ordinance was enacted prohibiting the construction of four-flat dwellings in a designated area for the reason that a com-

prehensive zoning plan covering the entire city of Los Angeles was contemplated by the city council. The ordinance was held to be a valid exercise of the police power reserved to municipalities in section 11 of article XI of the California Constitution. The court, in determining that zoning laws were a legitimate object of the police power and that the purpose of comprehensive zoning in "the attainment of the unity in the construction and development of a city, along the lines of reasonable regulations which tend to promote the health, safety, morals, and general welfare of the community . . ." (p. 495), stated as follows, on page 496: "It is a matter of common knowledge that a zoning plan of the extent contemplated in the instant case cannot be made in a day. Therefore, we may take judicial notice of the fact that it will take much time to work out the details of such a plan and that obviously it would be destructive of the plan if, during the period of its incubation, parties seeking to evade the operation thereof should be permitted to enter upon a course of construction which might progress so far as to defeat in whole or in part the ultimate execution of the plan. It follows, it seems to us, that the fact that comprehensive zoning in the instant case had not matured to the point of being an enacted and existing ordinance, at the time the emergency ordinance in the instant case was enacted, does not detract from the validity of the latter ordinance upon the theory that there could be no assurance that the contemplated zoning ordinance would be ultimately enacted and enforced. The good faith of the council in enacting the ordinance in question is not challenged nor is it asserted that the council will not proceed in good faith to the enactment of a general zoning ordinance, and in the absence of any issue concerning the good faith of the council, the presumption of fair dealing on the part of the council and the further presumption that they will not fail in the performance of an official duty must prevail." In the present case we have more than contemplated action. While we do not have a final redevelopment plan, definite steps have been taken to bring such plan to maturity. An agency has been created, a redevelopment and project area have been designated, and funds with which to implement the plan have been applied for and granted.

The reasoning of the Miller case was followed in *Lima* v. *Woodruff*, 107 Cal.App. 285 [290 P. 480], where an emergency ordinance passed by the city council of San Jose directing the building inspector not to issue building permits not in

conformity with a preliminary zoning ordinance recommended by the planning commission, was upheld. Under the terms of the said zoning ordinance (which was subsequently adopted by the council) a building of the character sought to be constructed by the appellant was prohibited.

In *Fowler* v. *Obier*, 224 Ky. 742 [7 S.W.2d 219], the Miller case was cited and quoted with approval. There, an emergency ordinance was enacted suspending for two years the building laws of the city of Louisville pending "investigation" for the enactment of a general zoning law. The ordinance was upheld as a valid exercise of the police power.

Considerable stress is put by the appellants upon the contention that the questioned resolution amounts to a taking of property without just compensation in violation of section 14 of article I of the Constitution of California which provides that "private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court, for the owner. . . ." The basis for this contention is apparently the court's finding that appellants "have incurred great expense to prepare plans for said structure"; and "that any delay in the carring out of the intentions" of appellants "to erect said structure will cause further great expense." Assuming that these are ultimate findings of fact and not conclusions of law, it will be presumed here, because the appeal is taken on the clerk's transcript without any record of evidence, that the trial court received substantial evidence which supports its findings. (*Hinman* v. *Hinman,* 137 Cal.App.2d 739 [290 P.2d 596].) Respondents maintain, however, that the damage, if any, was "*damnum absque injuria*" because done under the police power reserved to the state and its political subdivisions pursuant to section 11 of article XI of the California Constitution which provides: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations as are not in conflict with general laws."

Section 14 of article I of the California Constitution has to do generally with the taking of property in the exercise of eminent domain. It has been held, however, that liability under this section arises "when the taking or damaging of private property is not so essential to the general welfare as to be sanctioned under the police power. . . ." (*Clement* v. *State Reclamation Board,* 35 Cal.2d 628, 636 [220 P.2d 897]; *House* v. *Los Angeles County Flood Control Dist.,* 25 Cal.2d

384 [153 P.2d 950].) In the House case the court said at page 388: "While the police power is very broad in concept, it is not without restriction in relation to the taking or damaging of property. When it passes beyond proper bounds in its invasion of property rights, it in effect comes within the purview of the law of eminent domain and its exercise requires compensation [citations]." In *Rose* v. *State,* 19 Cal.2d 713, 730 [123 P.2d 505], it was stated by the court that generally the "police power operates in the field of regulation, except possibly in some cases of emergency. . . ." In *Patrick* v. *Riley,* 209 Cal. 350 [287 P. 455], on the other hand, it was unequivocally stated at page 355 that, "[i]n the exercise of the right of eminent domain, private property may not be taken without compensation therefor, whereas in the exercise of the police power, the use of property may be restricted or it may even be destroyed, and no legal liability arises to compensate the owner therefor [citations]."

While it may appear at first blush that there is some confusion in the decisions, a reading of the cases discloses that the fundamental distinction between eminent domain and the police power is recognized. Each case depends upon its own particular factual situation. It appears that each case should be reviewed in the light of the *necessities* of the case. ██ The determination depends on whether or not the action is essential or reasonably necessary to safeguard public health, safety or morals. If the injury is the result of legitimate governmental action reasonably taken for the public good and for no other purpose, and is reasonably necessary to serve a public purpose for the general welfare, it is a proper exercise of the police power to permit the taking or damaging of private property without compensation. If, however, the taking or damaging for the purposes of public health, safety or morals is not so essential to the general welfare or is not prompted by so great a necessity, it comes within the purview of eminent domain and cannot be justified without proper compensation to the owner. (*House* v. *Los Angeles County Flood Control Dist., supra,* 25 Cal.2d 384; *Chicago B. & Q. Ry. Co.* v. *Illinois,* 200 U.S. 561 [26 S.Ct. 341, 50 L.Ed. 596]; see also concurring opinion by Carter, J. in *Southern Calif. Gas Co.* v. *City of Los Angeles,* 50 Cal.2d 713, 721 [329 P.2d 289].) ██ Applying these principles to the case at hand, we are of the opinion, as we have hereinbefore pointed out, that the "freezing" resolution was reasonably necessary to serve a public purpose for the general welfare. The injury to appellants is

incidental. There is no finding that appellants have been deprived of their property or that their property has been or will be depreciated in value. The only deprivation suffered is the "expense" of preparing plans and the "expense" occasioned by the delay in erecting the contemplated structure. We do not believe that such an incidental injury is such as to bring the instant case within "the purview of eminent domain."

Appellants contend further that an emergency must exist before a resolution such as the one herein involved can be passed. They base this contention upon certain language in *Rose* v. *State, supra,* 19 Cal.2d 713. The Rose case involved the construction of an underpass which impaired access to some abutting properties for which impairment damages were sought. The issue was whether plaintiff's right of access was substantially and unreasonably impaired by the construction of the subway. Our Supreme Court there treated the case as one essentially in eminent domain. In answering the defendant's contention that the damaging occurred as the result of the exercise of police power and hence was *damnum absque injuria,* the court said, on page 730: "[T]here is no basis for the application of the police power doctrine *to the factual situation in this case.*" (Emphasis added.) The court went on to say: "Generally, it may be said that the police power operates in the field of regulation, *except possibly in some cases of emergency such as conflagration or flood when private property may be temporarily used or damaged or even destroyed to prevent loss of life or to protect the remaining property of an entire locality.* There is obviously no element of regulation involved in the case at bar, and no suggestion of anything in the nature of an emergency. *The damage to plaintiffs' property herein involved was the result of a public improvement constructed by the state in the exercise of its power of eminent domain.*" (Emphasis added.) The clear holding of the case was that the police power doctrine cannot be invoked in the taking of private property by way of eminent domain in the construction of a public improvement where no emergency exists. The court was speaking of the emergency situations where the power of eminent domain would be qualified by the necessities of the case so as to preclude an award of damages. As we have discussed above, the exercise of proper police power is not predicated solely upon emergency but upon necessity founded upon reasonableness. It does not require the citation of authorities to demonstrate the many instances of

the proper exercise of police power which do not find their basis upon the circumstance of emergency.

It is further contended by appellants that the finding that the council "has not acted in a discriminatory, arbitrary, or confiscatory manner" is a conclusion of law and not a finding of ultimate fact. Conceding that it is, and reiterating our conclusion that the ultimate facts otherwise found are sufficient to sustain the conclusion of law that the passage of the resolution was a proper exercise of the police power, such ultimate facts would likewise support the conclusion that the council has not acted in a discriminatory, arbitrary, or confiscatory manner. These conclusions form the basis of the judgment. Furthermore, if the findings of fact support the judgment, and they do here, the judgment will be affirmed regardless of whether the findings support the conclusions of law. (Witkin, California Procedure, vol. 2, § 102; *Klein Norton Co.* v. *Cohen,* 107 Cal.App. 325, 332 [290 P. 613]; *Spencer* v. *Duncan,* 107 Cal. 423 [40 P. 549].)

The judgment is affirmed.

Bray, P. J., and Duniway, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied June 22, 1960.