[Civ. No. 14057. Third Dist. July 16, 1974.]

ATLANTIC RICHFIELD COMPANY et al.,
Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF SACRAMENTO COUNTY et al.,
Defendants and Appellants.

## COUNSEL

John B. Heinrich, County Counsel, and Robert S. Willett, Deputy County Counsel, for Defendants and Appellants.

Dahl, Hefner, Stark, Marois & James, Robert W. Bell and Richard K. Park for Plaintiffs and Respondents.

## OPINION

**REGAN, J.**—Petitioners (respondents here), Atlantic Richfield Company and Sibarco Stations, Inc., instituted this proceeding against the Board of Supervisors of Sacramento County (Board), the members thereof, and the Director of the Department of Public Works of Sacramento County to obtain a peremptory writ of mandate compelling issuance of a building permit to construct a service station. This appeal is from the judgment entered against the board of supervisors and the director of public works (defendants) ordering the issuance of the building permit prayed for in the lower court.

In 1965, Sacramento County adopted the "Carmichael Land Use Plan." One of the goals of this plan was "to revitalize the commercial center at Marconi Avenue and Fair Oaks Boulevard so that it could compete with the newer centers in the northeast area." A service station use was not contemplated within the planned area.

Petitioners Sibarco and Atlantic had actual notice of the Carmichael Land Use Plan and were aware that the construction of a service station would be inconsistent with the plan. However, the plan had no effect on the county zoning ordinances and the plan did not affect any rights of petitioners pursuant to the zoning ordinances.

At some time prior to May 8, 1972, petitioners applied to the county department of public works for a building permit to construct a service station on the site in reliance on the county's zoning regulation. The application contained all the matters required for the issuance of the permit.

At all times pertinent to this action, the property acquired by Sibarco and leased to Atlantic was classified as "C-1" property in accordance with the zoning ordinances of the county. The C-1 classification permitted the property to be used for a service station business.

On May 8, 1972, the department of public works completed its review of the application for a building permit. Thereafter the department, through its chief building inspector, notified petitioners that the permit would be validated upon payment of the required fees and could be picked up at the office of the chief building inspector any time after 12 p.m. on May 9, 1972.

On May 9, 1972, after 12 p.m., petitioners went to the office of the chief building inspector, tendered payment of the required fees, and made demand for the permit. At that time the chief building inspector advised petitioners that no building permits for the construction of new service stations would be issued pending further action by the Board after a notice hearing to be held by the Board on May 10, 1972, relative to requiring parties to obtain a "use permit" before building permits for the construction of new service stations could be issued.

On the morning of May 9, 1972, the Board at a regularly scheduled meeting had directed (through the clerk) an interoffice communication to the director of the department of public works instructing him to issue no building permits for construction of service stations until after the May 10, 1972, hearing on an interim ordinance that would require "use permits" for the construction of service stations.

On May 10, 1972, the Board adopted Interim Ordinance No. 1108, to take effect immediately. This ordinance provided that a use permit had to be obtained prior to the issuance of a building permit for a service station.[1] Section 4 of the ordinance provides: "This Ordinance is adopted to protect the public safety, health and welfare, and is adopted as an urgency measure pursuant to the provisions of Section 65858 of the Government Code of the State of California and shall take effect immediately. The urgency is based on the fact that the Board of Supervisors of

---

[1]Notice of this public hearing, and the contents of the proposed ordinance, were published in the Sacramento *Union* on April 26, 1972.

Sacramento County has become aware that many service stations are closing down their operations while other service stations are being constructed at new locations. The Board of Supervisors has instructed the County Planning Department to commence investigation of the matter to determine if regulations different from those previously set forth in Ordinance No. 534, as amended, should be considered. The purpose of this interim ordinance is to provide that during the period of study by the Planning Department that the Board of Adjustment and the Board of Supervisors examine each proposed service station use to determine if the use is appropriate at the proposed location, and, if appropriate, what conditions should be attached to the permit so that the use will be compatible in the neighborhood."

Petitioners have apparently never sought a use permit as required by this ordinance but elected instead to bring the instant action.[2]

Based upon the foregoing, the trial court concluded the petitioners were entitled to a building permit on May 9, 1972, under the laws and regulations of the county in effect on that date. The court also concluded the refusal to issue a permit was an abuse of authority on the part of the Board and the county officials.

The county contends the building permit was properly refused by the director of public works since there was a pending ordinance which would have changed the permit procedure as applied to service stations. The county also argues that the mere application for a building permit does not vest any right in the applicant. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 37, fn. 5, 40, 43-44 [56 Cal.Rptr. 672, 423 P.2d 824]; *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 434 [271 p. 487]; *Miller* v. *Board of Public Works* (1925) 195 Cal. 477, 495 [234 P. 381, 38 A.L.R. 1479]; *West Coast Advertising Co.* v. *City & County of San Francisco* (1967) 256 Cal. App.2d 357, 359-360 [64 Cal.Rptr. 94]; *Slater* v. *City Council* (1965) 238 Cal.App.2d 864, 867 [47 Cal.Rptr. 837]; *Chas. L. Harney, Inc.* v. *Board of Permit Appeals* (1961) 195 Cal.App.2d 442, 446-448 [15 Cal. Rptr. 870].)

Sibarco and Richfield, on the other hand, rely upon a line of cases which place special facts qualifications on the majority rule, set forth above. They contend the majority rule does not apply when a permit should

---

[2]In this respect we note that the trial court specifically found that there is no administrative remedy available to petitioners. The trial court also found that the California Environmental Quality Act was not applicable. (See Pub. Resources Code, § 21169.)

have issued before the change in the law, and thus constitutes an exception. (See *Anderson* v. *City Council* (1964) 229 Cal.App.2d 79 [40 Cal.Rptr. 41]; *McCombs* v. *Larson* (1959) 176 Cal.App.2d 105 [1 Cal.Rptr. 140]; *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543 [314 P.2d 67].) These cases, however, have been characterized as involving ordinances enacted to frustrate a developer's plans (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d at p. 37, fn. 5) or ordinances which are discriminatory, arbitrary and confiscatory in nature. (*Chas. L. Harney, Inc.* v. *Board of Permit Appeals, supra,* 195 Cal.2d at pp. 448-449.)[3]

We do not believe the so-called special facts qualification should apply under the circumstances of this case. There is nothing in the record whatsoever to indicate that the county acted in bad faith. Petitioners here had actual notice of the Carmichael Land Use Plan and legal notice of the proposed ordinance. On May 9, 1972, the Board instructed the director of public works not to issue any building permits for service stations until after May 10, 1972, on which date the Board had scheduled a public hearing to discuss an interim zoning ordinance relating to the regulation of *all* proposed service stations within a certain described zone. There is no showing here that the county was attempting to frustrate a particular developer (Sibarco and Richfield) or that the administrative action and subsequent legislative action was discriminatory, arbitrary and confiscatory. In sum, we find no inherent unfairness in the county's actions.[4] We believe the court erred in applying the exception to the general rule.

A similar argument (as put forward here) was advanced in *Chas. L. Harney, Inc.* v. *Board of Permit Appeals, supra,* where the court stated (at p. 446): "We first discuss the board's power to deny the application upon

---

[3]The court in *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 126, fn. 11 [109 Cal.Rptr. 799, 514 P.2d 111], comments upon this apparent conflict as follows: "The cases holding that an appellate court will apply the rule in existence at the time of deciding the appeal appear to be inconsistent with another line of authority holding that if an applicant complies with all the requirements for a building permit at the time the application is made he is entitled to a permit even though the law has been changed prior to the decision on appeal. (See, e.g., *Sunset View Cemetery Assn.* v. *Kraintz* (1961) 196 Cal.App.2d 115, 123-124 [16 Cal.Rptr. 317]; *McCombs* v. *Larson* (1959) 176 Cal.App.2d 105, 107 [1 Cal.Rptr. 140]; *Munns* v. *Stenman* (1957) 152 Cal.App.2d 543, 551 [314 P.2d 67].) These two apparently conflicting lines of cases have been distinguished on the ground that the change in the ordinance is deemed inapplicable if its enactment stemmed from an attempt to frustrate a particular developer's plans. (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals, supra,* 66 Cal.2d 34, fn. 5 at p. 37; Cal. Zoning Practice (Cont. Ed. Bar (1969) § 5.57; cf. *Keizer* v. *Adams* (1970) 2 Cal.3d 976 [88 Cal.Rptr. 183, 471 P.2d 983].)"

[4]We also note that petitioners still have the possibility of obtaining a use permit, for which they have never applied.

the basis of the ordinance that would become effective July 23d, for if it had such a right the denial must stand regardless of any other basis it might possess for refusing a permit. Respondents urge that their right to a permit is to be determined as of the date of their application and cannot be affected by an ordinance subsequently adopted, and that the board, in determining whether they should have a permit, was not entitled to consider the provisions of a future ordinance. We do not agree with this argument, for the rule to the contrary has been established in this state in the case of *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426 . . . ." (Accord, *West Coast Advertising Co.* v. *City & County of San Francisco, supra,* 256 Cal.App.2d at p. 359.)

We hold that the director properly denied the issuance of the permit on the basis of the Board's directive and on the basis of the pending legislation.

■ There is another reason why the judgment must be reversed as explained by the court in *Selby Realty Co.* v. *City of San Buenaventura* (1973) 10 Cal.3d 110, 125-126 [109 Cal.Rptr. 799, 514 P.2d 111]: "Several cases have held that the mere application for a building permit or the submission of plans which comply with the law in existence at the time of such submission do not entitle an applicant to the issuance of the permit if, in the interim between administrative denial of the permit and the appeal from that denial, an ordinance has been enacted which would prohibit the project contemplated. (*Sunny Slope Water Co.* v. *City of Pasadena* (1934) 1 Cal.2d 87, 91 [33 P.2d 672]; *Wheat* v. *Barrett* (1930) 210 Cal. 193, 195 et seq. [290 P. 1033]; *West Coast Advertising Co.* v. *City & County of San Francisco* (1967) 256 Cal.App.2d 357, 360 [64 Cal. Rptr. 94]; cf. *Thompson* v. *City of Los Angeles* (1947) 82 Cal.App.2d 45, 47 [185 P.2d 393].) *It is the prevailing rule that a reviewing court will apply the law in existence at the time of its decision rather than at the time the permit was denied.* (See 3 Anderson, American Law of Zoning (1968) p. 599.) *The purpose of the rule is to prevent an appellate court from issuing orders for the construction of improvements contrary to presently existing legislative provisions.* (Cf. *Ziffrin, Inc.* v. *United States* (1943) 318 U.S. 73, 78 [87 L.Ed. 621, 625-626, 63 S.Ct. 465].) Indeed, even after a permit has been issued, it may be revoked by an administrative body on the basis of a subsequent change in the zoning laws unless the permittee has made substantial improvements in good faith reliance on the permit. (See *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 39 [57 Cal.Rptr. 672, 423 P.2d 824]; *Brougher* v. *Board of Public Works* (1928) 205 Cal. 426, 432-435 [271 P. 497].)" (Italics added.)

Thus, since this court must decide the question here presented according to the existing law,[5] the trial court's order granting the writ must be reversed. (*West Coast Advertising Co.* v. *City & County of San Francisco, supra,* 256 Cal.App.2d at p. 360.)

The county also contends that a moratorium on building permits is valid. It argues that in *Hunter* v. *Adams* (1960) 180 Cal.App.2d 511 [4 Cal.Rptr. 776], the City Council of Monterey acted *administratively* by *resolution* and froze the issuance of building permits for a period of one year in support of an urban renewal project. The court in *Hunter* upheld the city's action. (180 Cal.App.2d at pp. 523-524.) The county then submits that if a city can administratively place a moratorium for a full year on all construction, the Board should certainly be authorized to withhold building permits for 24 hours.

Petitioners contend that the Board's directive of May 9, 1972, constituted a regulation of land and thus required the adoption of an ordinance. (See Gov. Code, §§ 65850, 65858.) They contend that the use of an inter-office memorandum, rather than the enactment of an ordinance, does not comply with the law. (Cf. *City of Sausalito* v. *County of Marin* (1970) 12 Cal.App.3d 550, 564 [90 Cal.Rptr. 843].) Petitioners also point out, and properly so, that the court in *Hunter* treated the resolution as a legislative act. (180 Cal.App.2d at pp. 514, 519.)

Despite petitioners' arguments, however, the action of the Board in withholding all building permits for service stations for 24 hours was not a land regulation. Such action was prompted (if not compelled) by the impending public hearing on this subject. The Board's action under the circumstances was valid.

Lastly, the county contends that even where a building permit has been issued, it may be revoked by a subsequent ordinance so as to prevent the proposed use. As previously noted, this is the law in California unless the permittee has made substantial improvements in good faith reliance on the permit. (*Selby Realty Co.* v. *City of San Buenaventura, supra,* 10 Cal.3d at pp. 125-126; *Igna* v. *City of Baldwin Park* (1970) 9 Cal.App.3d 909, 913-914 [88 Cal.Rptr. 581].) Thus, even if the building permit had been issued on the afternoon of May 9, it could have been revoked upon the

---

[5]In this connection we note that no substantive or procedural attack has been made on the ordinance itself or the adoption thereof.

The interim ordinance was to expire November 9, 1972. Apparently, however, a regular ordinance has been enacted since the parties in their briefs are still debating the point.

enactment of the intermin ordinance of May 10. The Sacramento County ordinances cited by petitioner do not alter this result for the older ordinance refers to continuing land uses, is permissive only, and was operative as to uses in existence at a time prior to the dates involved herein. The new ordinance was adopted after the events that occurred here and therefore is not applicable.

The judgment is reversed.

Richardson, P. J., and Friedman, J., concurred.