CITY OF TAKOMA PARK ET AL. *v.* COUNTY
BOARD OF APPEALS FOR MONTGOM-
ERY COUNTY

[No. 54, September Term, 1970.]

*Decided November 17, 1970.*

620

The cause was argued before HAMMOND, C. J., and MCWILLIAMS, FINAN, SMITH and DIGGES, JJ.

*Glenn E. Culpepper,* with whom was *Vincent L. Gingerich* on the brief, for appellants.

*Stephen J. Orens,* Assistant County Attorney, with whom were *David L. Cahoon,* County Attorney, and *Alfred H. Carter,* Deputy County Attorney, on the brief, for appellee.

MCWILLIAMS, J., delivered the opinion of the Court.

The City of Takoma Park (City) urges us to set aside a resolution of the Montgomery County Board of Appeals (Board) granting a special exception to a Mexican immigrant whose name, *mirabile dictu,* is Rafael Kranwinkel. The trial judge, Shook, C. J., correctly we think, affirmed the Board's action.

Kranwinkel, an upholsterer by trade, moved from Mexico City to the Washington area about ten years ago. His English "is not too strong." Late in 1968 he bought a modest frame house on Sycamore Avenue in Takoma Park. It lies within an R-60 (one-family, detached residential) zone. He occupies the second floor together with a Mexican woman, described as a friend, and her two children; the boy is 17, the girl 20. Using the first floor to work at his trade, he makes slipcovers and reupholsters furniture; on occasion he repairs the wooden parts of the furniture.

In the spring of 1969, following a neighbor's complaint,

an inspector from the Fire Department found debris around the outside of the house, various combustible materials in the living room, and lacquers, thinners, alcohols and wood stains in the basement. Following the inspection Kranwinkel received a letter from the Division of Fire Protection stating that "certain fire hazards * * * [had been] noted" and instructing him to take certain precautions in that regard. He said he did what was required of him, but the Fire Department did not re-inspect the premises.

Having been told that his business was a violation of the zoning laws, i.e., a commercial use in an R-60 zone, he applied to the Board for a special exception, as provided by Section 111-37 of the Montgomery County Zoning Ordinance. His petition came on for a hearing before the Board on 5 June 1969. He testified he could not afford to rent a shop in a commercial district and maintain a house at the same time. He employs no one but the Mexican woman and her children do help him at times. Customers do not come to the house. Except for a small truck, which he parks beside the house and which he uses not more than twice a day, his occupation generates no traffic. His tools consist of a sewing machine and a stapler. Only very small amounts of alcohol and stain are used for touching up furniture. He makes no noise and he stores all combustible materials in metal fireproof containers. The basement he uses only for his hobby which is cabinet making. He said the entrance to the basement was so small he could not "take a sofa downstairs."

"A special exception is a use which has been legislatively predetermined to be conditionally compatible with the uses permitted as of right in a particular zone * * *." *Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712 (1970). The Montgomery County Council has legislatively predetermined that special exceptions may be granted for "home occupations" within residentially zoned areas. Zoning Ordinance § 111-37 p. A "Home Occupation" as defined in § 111-2 of the Zoning Ordinance is:

"An occupation *conducted entirely within a dwelling by a member or members of the immediate family residing therein* (a) in connection with which there is used no display except one sign affixed to the building not exceeding a total area of two square feet, nor projecting more than one foot beyond the building, and not illuminated, that will indicate from the exterior that the building is being utilized in whole or in part for purposes other than that of a dwelling; (b) in connection with which there is kept no stock in trade or commodity sold upon the premises; (c) in connection with which no person is engaged or employed other than a member of the immediate family residing on the premises; and (d) in connection with which no equipment or facilities are used other than those needed for purely domestic or household purposes. Boarding and rooming houses, tourist homes and private educational institutions shall not be deemed home occupations." (Emphasis added.)

Section 111-37 p of the ordinance sets forth additional specific criteria for "Home Occupation":

"In any Residential Zone, except R-E, the use of a dwelling for a home occupation, upon a finding by the Board that such use will not constitute a nuisance because of sidewalk or street traffic, noise or type of physical activity, and that such use will not tend to affect adversely the use and development of adjoining properties in the immediate neighborhood. Permission so to use such property for such home occupation may be granted by said Board for a one-year period and may be renewed by the Board at yearly intervals upon the same findings required for the initial grant of permission by said Board. A private educational institution,

boarding house, rooming house, or tourist home shall not be deemed a home occupation."

Criteria applicable to *all* special exceptions are set forth in § 111-35:

"A special exception may be granted when the Board, or the Director, as the case may be, finds from a preponderance of the evidence of record that:

"(1) The proposed use does not affect adversely the General Plan for the physical development of the District, as embodied in this Ordinance and in any Master Plan or portion thereof adopted by the Commission; and

"(2) The proposed use at the location selected will not:

"(a) adversely affect the health and safety of residents or workers in the area;

"(b) overburden existing public services, including water, sanitary sewer, public roads, storm drainage, and other public improvements;

"(c) be detrimental to the use or development of adjacent properties or the general neighborhood; nor change the character of the general neighborhood in which the use is proposed considering service required, at the time of the application, population density, character, and number of similar uses; and

"(3) The standards set forth for each particular use for which a special exception may be granted have been met.

"(b) The applicant for a special exception shall have the burden of proof, which shall include the burden of going forward with the evidence and the burden of persuasion on all questions of fact which are to be determined by the Board or the Director."

The City's Assistant Fire Marshal testified that the

storage of combustible materials in the basement would endanger the residents of the house, the neighbors and, in the event of a fire, the fire fighters, but he agreed that it would cost too much to make the building fireproof and safe for the conduct of an upholstery business.

What follows is an excerpt from the Board's resolution granting the special exception:

> "Based on the testimony and evidence of record, and considering the proposed limited use, the Board finds the proposed use will not constitute a nuisance because of sidewalk or street traffic, noise or type of physical activity, and that such use will not tend to affect adversely the use and development of adjoining properties in the immediate neighborhood. The Board further finds that the proposed use will not affect adversely the General Plan for the physical development of the District as embodied in the Ordinance and in any Master Plan or portion thereof adopted by the Commission; and the proposed use will not (a) adversely affect the health and safety of residents or workers in the area; (b) overburden existing public services, including water, available to the site; (c) be detrimental to the use or development of adjacent properties or the general neighborhood; nor change the character of the general neighborhood in which the use is proposed considering service required at the time of the application, population density, and number of similar uses.

> "Accordingly, the requested Special Exception is granted to the petitioner only, for a one-year period, subject to renewal by the Department of Inspection and Licenses, and subject to the following conditions:

> 1. Stuffing materials shall be stored in metal lined bins with self-closing metal covers.

2. Floor and work benches shall be kept clean.
3. Paints and other combustible materials shall be stored in approved metal containers and waste rags kept in self-closing metal containers.
4. Smoking shall be prohibited in the shop area.
5. There shall be no accumulation of waste material on the property.
6. There shall be no sale of merchandise of any kind from the subject property."

The City argues that Kranwinkel's upholstery business does not qualify as a "home occupation" because persons other than "members of the immediate family" assist in the work. There was testimony that the Mexican woman, related to Kranwinkel neither by blood nor affinity, occasionally helped out by doing some sewing and that her son helped move the larger pieces of furniture into and out of the house. Section 111-2 of the Zoning Ordinance defines "family" as:

"An individual, or two or more persons related by blood or marriage, *or a group of not more than five persons (excluding servants) not related by blood or marriage, living together as a single housekeeping group in a dwelling unit.*" (Emphasis added.)

We think the County Council intended to recognize the fact that unrelated persons often live and work together. Although it is likely the Council had in mind persons of the same sex it seems to us entirely clear that Kranwinkel and his companions are within the meaning of "family," as it is defined in the ordinance. The City insists that the words "immediate family," as used in § 111-2, restricts participation in home occupations to blood relatives only. The County (which intervened on behalf of the Board) says the words "immediate family" go no further than the restriction of "family" to those persons residing in

the dwelling house intended for such use and to exclude all persons, regardless of relationship, who do not reside therein. This strikes us as a reasonable view of the legislative intent and we hold, in the circumstances, that Kranwinkel and his *amigos* are a § 111-2 "family" and that what they do there is a "home occupation" authorized by § 111-37 p.

The City argues also that the Board failed to give proper weight to the testimony of the fire marshal. Had the evidence of fire hazards been properly considered, it says, the exception would surely fail as having an adverse effect on "the health and safety of residents or workers in the area." Zoning Ordinance Section 111-35 (2) (a). In this regard it will be recalled that the Board found that "the proposed use will not * * * adversely affect the health and safety of residents or workers in the area."

Despite the fact that it is well known and perhaps a little shopworn, we shall repeat once more what we said in *Crowther, Inc. v. Johnson,* 225 Md. 379, 383 (1961):

> "The general rule is that in reviewing the action of zoning boards a court will not substitute its judgment for the judgment of the board unless its action is shown to be arbitrary, capricious or illegal. * * * [Citing cases.] But if the questions involved are fairly debatable and the facts presented are sufficient to support the board's decision it must be upheld. * * * [Citing cases.] Moreover, conditions upon which a special exception may be granted are set out in the ordinance, and the board is given a wide latitude of discretion in passing upon special exceptions so long as the resulting use is in harmony with the general purpose and intent of the zoning plan and will not adversely affect the use of the neighboring properties and the general plan of the neighborhood as provided by the zoning ordinance. * * * [Citing cases.]"

For more recent expressions to the same effect, *see, e.g.,* *Creswell v. Baltimore Aviation Service, Inc.,* 257 Md. 712 (1970) ; *Tauber v. County Board of Appeals for Montgomery County,* 257 Md. 202 (1970).

We cannot say that the actions of the Board have been shown to be arbitrary, capricious or illegal. The record shows that Kranwinkel said he did what was required of him and that his house was not re-inspected. Its condition at the time of the hearing is unknown. Moreover, there is uncontroverted evidence that the alleged fire hazards in the basement arose in conjunction with Kranwinkel's hobby as a cabinet maker and bore no relationship to the challenged upholstery business. Even assuming that hazards did exist at one time we think the conditions placed on the grant by the Board, coupled with the annual renewal provisions, adequately protect the public health and safety.

*Order affirmed.*
*Costs to be paid by the appellants.*