922 A.2d 576

Colleen LAYTON, et al.

v.

HOWARD COUNTY BOARD Of APPEALS, et al.

No. 116, Sept. Term, 2006.

Court of Appeals of Maryland.

May 9, 2007.

M. Albert Figinski (Law Offices of Peter G. Angelos, Baltimore, on brief), Fred M. Lauer, Baltimore, for petitioners.

Thomas M. Meachum (Reese & Carney, LLP, Columbia, on brief), Barry M. Sanders, Asst. County Solicitor (Howard County Office of Law, Ellicott City, on brief), for respondents.

Argued before Bell, C.J., Raker, Cathell, Harrell, Battaglia, Greene, Alan M. Wilner, (Retired specially assigned), JJ.

CATHELL, J.

This case, in a land use or zoning context, addresses the question of the retrospective applicability of a related statutory law which is amended during the course of litigation. It presents the issue of whether the rule in *Yorkdale Corporation v. Powell,* 237 Md. 121, 205 A.2d 269 (1964), may be applied to enlarge uses as well as to limit uses.

Colleen Layton and Scott Robbins, d/b/a Frisky's Wildlife and Primate Sanctuary, Inc., (collectively referred to as "Frisky's"), the petitioners, attempted to obtain a special exception to operate as a charitable and philanthropic institution in Howard County. The primary reason for the application was that Frisky's had apparently been out of compliance with Howard County's zoning ordinances in its operation as an animal rehabilitation center and primate sanctuary. The Howard County Board of Appeals (the "Board") granted Frisky's special exception in part, but denied it permission to operate as a primate sanctuary. Thereafter, on June 17, 2004, petitioners filed a petition for judicial review in the Circuit Court for Howard County. On June 25, 2004, Richard Wyckoff and Julianne Tuttle, neighbors of Frisky's, filed a separate petition for judicial review, which the Board joined (collectively the respondents). Both petitions, by order of the court,

were later consolidated. On September 27, 2004, a pertinent portion of the Howard County Code was amended, changing the definition upon which the Board had relied in making its initial zoning decision to deny Frisky's permission to operate a primate sanctuary. On April 8, 2005, the Circuit Court held a hearing on the matter and, on July 13, 2005, issued a memorandum opinion affirming the decision of the Board.

Petitioners filed a motion to alter or amend judgment, which was denied on August 30, 2005. Petitioners then appealed to the Court of Special Appeals. In a reported opinion, *Layton v. Howard County Board of Appeals*, 171 Md.App. 137, 908 A.2d 724 (2006), the Court of Special Appeals affirmed the decision of the Circuit Court. Petitioners then timely filed a petition for certiorari with this Court, which we granted on December 14, 2006. *Layton v. Howard County*, 396 Md. 12, 912 A.2d 648 (2006).[1] One question is presented for our review:

"Whether one who challenges a decision of a zoning board may have, as Petitioners here seek, (a) the benefit of a legislated change in the basis of a decision of the zoning board and (b) demand application on judicial appeal of the 'new law'?"

We answer this question in the affirmative. Under the *Yorkdale Corporation v. Powell*, 237 Md. 121, 205 A.2d 269 (1964), rule, legislated change of pertinent law, which occurs during the ongoing litigation of a land use or zoning case, generally, shall be retrospectively applied.

## I. Facts

Petitioners have operated Frisky's, a wildlife refuge and sanctuary, in Howard County since 1976. Frisky's has been at its current location, 10790 Old Frederick Road, Woodstock, Maryland, since 1993. That property is composed of 3.728 acres and is zoned as a Rural Conservation–Density Exchange Option Overlay Zoning District ("RC–DEO").

---

1. This matter has been before administrative and judicial entities for approximately seven years.

This controversy arose on December 14, 1999, when petitioners were issued a notice by the Howard County Department of Planning and Zoning (the "Department") for violating a zoning regulation by operating a charitable and philanthropic institution without an approved special exception. Frisky's was incorporated in 1998, as a not-for-profit corporation, but petitioners had never filed for a special exception to bring the operation of the facility into compliance with Howard County's zoning regulations.

On April 28, 2000, petitioners filed a petition "for a Special Exception for a Charitable and Philanthropic Institution (Section 131.N.13) for an existing wildlife rehabilitation center and primate sanctuary" with the Department. The Department, on August 9, 2000, issued a recommendation to the Howard County Board of Appeals, in which it suggested that Frisky's petition for a special exception be approved, subject to a number of conditions. The matter then went before the Board, for a special exception petition for a charitable and philanthropic institution in a RC–DEO, pursuant to § § 131.N.13 [2]

---

**2.** HCZR § 131.N.13 at that time stated:

"Charitable and Philanthropic Institutions
A special exception may be granted in the RC, RR, R–ED, R–20 and R–12 Districts for a charitable or philanthropic institution, provided that:
a.  The minimum lot size shall be 40,000 square feet.
b.  The proposed activities on the site shall be specified, including the institution's goals, activities and hours of operation.
c.  The institution shall be a charitable or philanthropic institution as defined in these regulations. The fact that the organization is a tax-exempt entity does not, of itself, constitute eligibility as a special exception, but may be considered as one of the factors of eligibility, provided the use complies in all other respects with the definition.
d.  The petitioner demonstrates that the use shall meet applicable Federal, State or local laws and regulations.
e.  The use shall not have an adverse effect on the use or development of surrounding properties due to noise, odor, traffic, lights or any other reason.
f.  All parking areas and outdoor activity areas shall be screened from surrounding properties and roads by landscaping or other appropriate means.

and 130.B.2 [3] of the Howard County Zoning Regulations ("HCZR") in effect at that time. Numerous hearings were held over the course of the next three years—these hearings included testimony from witnesses on both sides.

On May 18, 2004, the Board issued its written decision, which, as relevant to this proceeding, granted Frisky's a special exception to operate as a charitable and philanthropic institution, including permitting the operation of an animal rehabilitation center on the property. The Board, however, denied Frisky's an exception to operate a primate or other exotic wildlife sanctuary. The Board's factual findings stated, in pertinent part:

"2. The Petitioner currently operates a charitable institution that functions as an animal rehabilitation center and primate sanctuary (the 'Center') on the Property. Frisky's is registered with the State of Maryland as a Charitable Organization and with the State Department of Assessments and Taxation as a non-stock, not for profit corporation for the purpose of a charitable organization. In order to operate such an organization in the RC district, a Special Exception is required.[4] The Petitioner is trying to gain approval as a Special Exception for a 'Charitable and Philanthropic Institution' for this purpose on the 3.728 acre Property.

"3. The Petitioner's proposed activities include care and rehabilitation for 'wildlife that have been injured or orphaned; domestic animals such as rabbits, and farm animals that are sick or who have become pets, but can't be kept by their owners; and primates that come from laboratories, sanctuaries or private owners around the country before it

---

g. The design of any structures shall be compatible with that of other structures in the vicinity."

**3.** HCZR § 130.B.2 pertained to variances and is not relevant to this appeal.

**4.** "A zoning violation notice was issued to Scott Allen Robbins and Colleen Lucille Layton on December 14, 1999, for operating a charitable and philanthropic institution without an approved Special Exception." Board's opinion, n. 1.

became illegal to own primates without a license.' The Petitioner submitted documentation of a Wildlife Permit for Wildlife Rehabilitation from the Maryland Department of Natural Resources. . . .

"4. At the hearing held before the Board on November 1, 2001, the Petitioner submitted documentation that F risky's had obtained a 'Class C Exhibitor' license pursuant to the Animal Welfare Act (7 U.S.C. 2131 et seq.) from the United States Department of Agriculture.

"5. Animals which are permitted to be rehabilitated are accepted from multiple sources, provided care and shelter, and upon recovery, are released back into the wild or made available for adoption. Primates stay in the care of Frisky's for the remainder of their lives.

. . .

"18. The Board finds based on the evidence presented that the Petitioner operates the Center on the subject Property as a charitable institution for the rehabilitation and sanctuary of animals. Included in the animals housed in the center are monkeys, other primates and wild animals. Exotic animals are defined in Section 17.300(p) of the Howard County Code (the 'Code') as 'animals of a species that is not indigenous to Howard County and is not a domesticated animal.' A wild animal is defined in Section 17.300(y) of the Code as 'an animal which is not a domesticated animal, is incapable of being completely domesticated, or requires the exercise of art, force, or skill to keep it in subjugation. Wild animal includes any hybrid animal which results from the breeding of a wild animal and a domesticated animal.'

"19. The Board finds that the monkeys and other primates housed in the Center are wild and exotic animals as defined in the Code.

"20. Section 17.306(e) of the Code provides that wild or exotic animals are prohibited in Howard County as follows:

(1) Wild or exotic animals prohibited: No person may keep, hold for sale or sell wild or exotic animals even if well

trained, de-clawed, defanged, ostensibly domesticated and affectionate to people.

(2) Exemption for licensed veterinarian: a licensed veterinarian is exempt from the provisions of paragraph (1) only for the purpose of professional medical treatment of such animals.

(3) Exemption for research, study, exhibits: The holder of a currently valid permit issued by a state or federal authority to keep animals for scientific research, study, or exhibits is exempt from the provisions of paragraph (1) only to the extent provided in the permit.

"21. The Board finds that although the Petitioner may have a license to exhibit animals at the Center, the Petitioner initially did not apply to be an animal exhibitor and subsequently failed to provide sufficient evidence during the course of the hearings held before the Board to determine that the Petitioner is, in fact, an animal exhibitor. . . .

"22. Therefore, the exemption for 'exhibits' in Section 17.306(e)(4)[ (3) ] is not applicable to this petition."

The Board's conclusions of law stated, in pertinent part:

"1. The Board concludes that the Petitioner operates the Center as a charitable institution for the rehabilitation and sanctuary of animals on the Property.

"2. The Board concludes that the rehabilitation center and sanctuary does not operate as a center for displaying or exhibiting the animals to the public.

"3. The Board concludes that the monkeys and other primates at the center are wild and exotic animals as defined by the Howard County Animal Control Law, Section 17.300 et seq. of the Howard County Code.

"4. The Board concludes that it is unlawful under the Howard County Code to operate a primate sanctuary or wildlife rehabilitation center in Howard County. Section 17.306(e)(1) of the Code provides that 'No person may keep, hold for sale or sell wild or exotic animals even if well

trained, de-clawed, defanged, ostensibly domesticated and affectionate to people.'

"5. The Board concludes that although the Petitioner may have an exhibitor's license, the Petitioner failed to provide sufficient evidence during the course of the hearings for the Board to determine that the Petitioner is, in fact, an animal exhibitor rather than a sanctuary and rehabilitation center for animals. The exemption for exhibits in Section 17.306(e)(4)[ (3) ] of the Howard County Code does not apply because the Petitioner[ ] did not prove to the Board that she was an exhibitor and the Petitioner[ ] cannot therefore legally keep primates or other wild or exotic animals on the subject Property.

. . .

"7. The Board further concludes that because wild or exotic animals are prohibited by local law in Howard County (except under circumstances not found to be present in this case) the Zoning Board could not have contemplated a land use for a rehabilitation center and primate sanctuary for wild and exotic animals as constituting a charitable institution in the context of the zoning regulations. The Board cannot grant a special exception for the primate sanctuary use or that portion of the rehabilitation center involving wildlife which is not permitted by the Howard County Code or the Howard County Zoning Regulations.

"8. Thus this Board's approval of the charitable and philanthropic institution use for a animal sanctuary and rehabilitation center hereinafter (referred to as 'Approved Charitable Use') excludes the primate sanctuary and other wildlife not permitted under the Howard County Code."

Pursuant to the provisions of the Howard County Code in effect at the time of the Board's decision, monkeys and other primates were considered exotic or wild animals. §§ 17.300(p) and (y). Furthermore, § 17.306(e) of the Howard County Code, at that time, provided that no person (or corporation) could keep exotic or wild animals unless it met the exemption

of having a valid permit issued by a state or federal authority to keep such animals for scientific research, study or exhibits. § 17.306(e)(3). The Board found that Frisky's did not satisfactorily establish evidence to meet such an exemption and, therefore, determined that it was not permitted to operate a primate sanctuary.

On June 17, 2004, Frisky's filed a petition for judicial review in the Circuit Court for Howard County; Richard Wyckoff and Julianne Tuttle, neighbors of Frisky's, filed a separate petition for judicial review on June 25, 2004. Those petitions were consolidated by order of the court.

On September 27, 2004, prior to any hearing before the Circuit Court, Howard County amended pertinent provisions of the Howard County Code. The Code provided a definition for "Animal Sanctuary," which was not in existence at the time of the hearing before the Board. Specifically, § 17.300(g) stated:

"*Animal Sanctuary.*

A facility that performs at least one of the following functions:

(1) Rescues, rehabilitates and releases, when possible, native wildlife; or

(2) Provides permanent housing to the following categories of non-releasable animals, as defined in this subtitle:

(i) Wild animals; or

(ii) Exotic animals."

Exotic animals were defined in § 17.300(q) as: "An animal of a species that is not indigenous to Howard County and is not a domesticated animal...." Wild animals were defined in § 17.300(aa) as: "An animal that is not a domesticated animal, is incapable of being completely domesticated, or requires the exercise of art, force, or skill to keep it in subjugation...." Thus, monkeys and other primates still fell under the definition of a wild or exotic animal.

The provision upon which this case turns, however, (i.e., the section dealing with the keeping of wild or exotic animals) was also amended. Now set forth in § 17.307(d), it read:

> *"Wild or Exotic Animals Prohibited.* A person shall not keep, hold for sale, offer for sale, or sell a wild or exotic animal, even if the animal is well-trained, de-clawed, de-fanged, ostensibly domesticated, and affectionate to people, except that:
>
> (1) A circus or animal show holding a valid permit from any public authority for temporary operation is exempt from this subsection for the term of the permit;
>
> (2) A licensed veterinarian may temporarily keep such an animal only for the purpose of professional medical treatment of the animal;
>
> (3) The holder of a valid permit issued by a state or federal authority to keep a wild or exotic animal is exempt from this subsection only to the extent provided in the permit;
>
> . . .
>
> (5) *An animal sanctuary is exempt from this subsection if the sanctuary meets all state and federal licensing and permitting requirements."* [Emphasis added.]

Subsection (5) now provided an exemption for animal sanctuaries. Therefore, under the new law, as described by § § 17.300(g) and 17.307(d) of the Howard County Code, Frisky's may arguably meet the definition of an "Animal Sanctuary" and thus be exempt from the prohibition[5] against keeping wild or exotic animals under § 17.307(d)(5).[6]

---

**5.** This, of course, assumes that Frisky's does, in fact, meet all of the pertinent State and Federal licensing and permitting requirements.

**6.** Arguably, Frisky's could apply for a new special exception utilizing the current law. There are, however, provisions in the Code that prohibit reapplication until a certain period of time has passed. Whether reapplication prohibitions apply when the law itself is changed is an issue not directly presented in this case and the resolution must await a case in which the issue is present.

Petitioners incorporated this change in law into the arguments presented before the Circuit Court for Howard County. On April 8, 2005, the Circuit Court held a hearing on the consolidated petitions for judicial review and, on July 13, 2005, issued a memorandum opinion affirming the decision of the Board. The Circuit Court declined to accept petitioners' argument that the new provisions of the Howard County Code should be retrospectively applied to Frisky's petition for the operation of a primate sanctuary.[7]

Petitioners filed a motion to alter or amend judgment, which was denied by the Circuit Court. The petitioners then timely appealed to the Court of Special Appeals. The intermediate appellate court heard argument and issued its reported opinion on October 2, 2006. *Layton v. Howard County Board of Appeals,* 171 Md.App. 137, 908 A.2d 724 (2006).

The Court of Special Appeals addressed the retrospective application of the new provisions of the Howard County Code. After conducting a review of Maryland law, the court determined that the changes in the Code should not be applied to the case at bar. Specifically, the court stated:

"Turning to the instant case, we see no reason to stray from the general rule that statutes are presumed to operate prospectively and are construed accordingly. *See Washington Suburban Sanitary Commission v. Riverdale Heights Volunteer Fire Co. Inc.,* 308 Md. 556, 560–61, 520 A.2d 1319 (1987). We are unable to discern in the statute a clear expression of the legislative intent that the statute should operate retrospectively, nor have appellants directed us to any such intent in their brief or oral argument. Notwithstanding that there is no articulated legislative intent, no other exception to the general rule applies to the change in the animal control law.

"The law is not procedural, but substantive. The Court of Appeals discussed the difference between substantive laws

---

7. The Circuit Court also addressed several other arguments which were not presented to this Court.

.

and procedural or remedial laws in *Langston,* stating: 'A law is substantive if it creates rights, duties, and obligations, while a remedial or procedural law simply prescribes the methods of enforcement of those rights.' 359 Md. at 419, 754 A.2d 389 [ (2000) ] (citations omitted). The animal control law at issue provides a right for a sanctuary to have exotic and wild animals, not a new method or procedure to enforce their right to have the animals. We discussed in *Langston* what defines a remedial statute, stating:

> Generally, remedial statutes are those which provide a remedy, or improve or facilitate remedies already existing for the enforcement of rights and the redress of injuries. They also include statutes intended for the correction of defects, mistakes and omissions in the civil institutions and the administration of the state.

359 Md. at 408–09, 754 A.2d 389. The animal control law is not remedial, but a new substantive right to possess wild and exotic animals for facilities that are designated as animal sanctuaries.

"Finally, the animal control law is not a zoning law; [8] whether it should be applied retrospectively is not properly based upon the rationale relied upon in our decisions in *Mandel*[9] and *Holland*[10]. Thus, we hold that the circuit court did not err by refusing to remand the case to the Board for consideration under the current animal control law."

---

8. The Court of Special Appeals failed to discern that the definitions in the Animal Control Law were being applied in a land use context by reason of the description of uses in the zoning code and that, moreover, the definitions were a determinative factor in the agency's land use decision.

9. *Mandel v. Board of County Comm'rs of Howard County,* 238 Md. 208, 208 A.2d 710 (1965). We note that *Mandel* is a decision of this Court, not the Court of Special Appeals.

10. *Holland v. Woodhaven Building and Development, Inc.,* 113 Md.App. 274, 687 A.2d 699 (1996).

*Layton,* 171 Md.App. at 172–73, 908 A.2d at 744. The Court of Special Appeals affirmed the decision of the Circuit Court.

## II. Standard of Review

In *Purich v. Draper Properties, Inc.,* 395 Md. 694, 912 A.2d 598 (2006), we quoted *Alviani v. Dixon,* 365 Md. 95, 775 A.2d 1234 (2001), where we discussed the standard of review of administrative agency decisions in the context of special exceptions:

"A proceeding on a special exception is subject to a full judicial review. *Mossburg v. Montgomery County,* 329 Md. 494, 506, 620 A.2d 886, 892 (1993). We examined the correct standard of judicial review in *White v. North,* 356 Md. 31, 44, 736 A.2d 1072, 1079–80 (1999), when we stated that:

In judicial review of zoning matters, including special exceptions and variances, 'the correct test to be applied is whether the issue before the administrative body is "fairly debatable," that is, whether its determination is based upon evidence from which reasonable persons could come to different conclusions.' *Sembly v. County Bd. of Appeals,* 269 Md. 177, 182, 304 A.2d 814, 818 (1973). *See also Board of County Comm'rs v. Holbrook,* 314 Md. 210, 216–17, 550 A.2d 664, 668 (1988); *Prince George's County v. Meininger,* 264 Md. 148, 151, 285 A.2d 649, 651 (1972); *Zengerle v. Board of County Comm'rs,* 262 Md. 1, 17, 276 A.2d 646, 654 (1971); *Gerachis v. Montgomery County Bd. of Appeals,* 261 Md. 153, 156, 274 A.2d 379, 381 (1971). For its conclusion to be fairly debatable, the administrative agency overseeing the variance decision must have 'substantial evidence' on the record supporting its decision. *See Mayor and Aldermen of City of Annapolis v. Annapolis Waterfront Co.,* 284 Md. 383, 395, 396 A.2d 1080, 1087 (1979); *Montgomery County v. Woodward & Lothrop, Inc.,* 280 Md. 686, 706, 376 A.2d 483, 495 (1977), *cert. denied sub nom. Funger v. Montgomery County,* 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 769 (1978); *Agneslane, Inc. v. Lucas,* 247 Md. 612, 619, 233 A.2d 757, 761 (1967).

In *Mayor and Aldermen of City of Annapolis v. Annapolis Waterfront Co.*, 284 Md. 383, 398, 396 A.2d 1080, 1089 (1979), we defined the substantial evidence test as ' "whether a reasoning mind reasonably could have reached the factual conclusion the agency reached," *Insurance Comm'r v. Nat'l Bureau*, 248 Md. 292, 309, 236 A.2d 282 (1967), or as " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,' " *Bulluck v. Pelham Apts.*, 283 Md. 505, 390 A.2d 1119 (1978); *Snowden v. City of Baltimore, supra*, 224 Md. [443] at 448, 168 A.2d 390.' In applying the substantial evidence test:

The question for the reviewing court is ... whether the conclusions 'reasonably may be based upon the facts proven.' The court may not substitute its judgment on the question whether the inference drawn is the right one or whether a different inference would be better supported. The test is reasonableness, not rightness.

*Annapolis Waterfront Co.*, 284 Md. at 399, 396 A.2d at 1089, quoting 4 K. Davis, *Administrative Law*, § 29.05, 137, 139 (1958).

When we review an administrative agency's order, we make sure that it is not premised upon an error in the law. *Ad + Soil, Inc. v. County Commissioners of Queen Anne's County*, 307 Md. 307, 338, 513 A.2d 893, 909 (1986). 'Generally, a decision of an administrative agency, including a local zoning board, is owed no deference when its conclusions are based upon an error of law.' *Belvoir Farms Homeowners Association, Inc. v. North*, 355 Md. 259, 267, 734 A.2d 227, 232 (1999), citing *Catonsville Nursing Home, Inc. v. Loveman*, 349 Md. 560, 569, 709 A.2d 749, 753 (1998).

*Alviani*, 365 Md. at 107–09, 775 A.2d at 1241–42; *see also Department of Natural Resources v. Heller*, 391 Md. 148, 892 A.2d 497 (2006); *Motor Vehicle Administration v. Weller*, 390 Md. 115, 887 A.2d 1042 (2005)."

*Purich*, 395 Md. at 706–08, 912 A.2d at 606–07.

Furthermore, we stated in *Schultz v. Pritts*, 291 Md. 1, 432 A.2d 1319 (1981):

"When the legislative body determines that other uses are compatible with the permitted uses in a use district, but that the beneficial purposes such other uses serve do not outweigh their possible adverse effect, such uses are designated as conditional or special exception uses. *See City of Takoma Park v. County Bd. of Appeals for Montgomery County*, 259 Md. 619, 621, 270 A.2d 772, 773 (1970); *Creswell v. Baltimore Aviation Serv., Inc.*, 257 Md. 712, 719, 264 A.2d 838, 842 (1970); Art. 66B, § 1.00. Such uses cannot be developed if at the particular location proposed they have an adverse effect above and beyond that ordinarily associated with such uses."

291 Md. at 21–22, 432 A.2d at 1330; *see Mossburg v. Montgomery County*, 107 Md.App. 1, 7–8, 666 A.2d 1253, 1257 (1995) ("[A] special exception/conditional use in a zoning ordinance recognizes that the legislative body of a representative government has made a policy decision for all of the inhabitants of the particular governmental jurisdiction, and that the exception or use is desirable and necessary in its zoning planning provided certain standards are met."). Judge Davidson, writing for the Court in *Schultz*, elucidated the proper standard in relation to special exceptions as follows:

"[T]he appropriate standard to be used in determining whether a requested special exception use would have an adverse effect and, therefore, should be denied is whether there are facts and circumstances that show that the particular use proposed at the particular location proposed would have any adverse effects above and beyond those inherently associated with such a special exception use irrespective of its location within the zone."

291 Md. at 22–23, 432 A.2d at 1331 (citations omitted); *Harford County v. Earl E. Preston, Jr., Inc.*, 322 Md. 493, 499, 588 A.2d 772, 775 (1991).

In this case, we are not concerned with the Board's initial disposition of the case. Its determination as to whether Frisky's was entitled to a special exception was made pursuant to the Code in effect at that time. The question presented is

purely one of law—whether the Circuit Court should have retrospectively applied (or remanded the case for the Board to consider) the changed Code. As such, we shall review that question of law *de novo*. *Nesbit v. GEICO*, 382 Md. 65, 72, 854 A.2d 879, 883 (2004).

## III. Discussion

We are presented in this case with the occasion to revisit *Yorkdale Corporation v. Powell*, 237 Md. 121, 205 A.2d 269 (1964),[11] and those cases preceding and following it in creating an exception in land use cases to the general rule that statutes are presumed to operate prospectively. We stated the general rule in *Washington Suburban Sanitary Comm'n v. Riverdale Heights Volunteer Fire Co.*, 308 Md. 556, 560, 520 A.2d 1319, 1321 (1987), "[a]s a general rule, statutes are presumed to operate prospectively and are to be construed accordingly." *See State Ethics Comm'n v. Evans*, 382 Md. 370, 381, 855 A.2d 364, 370 (2004); *County Council of Prince George's County v. Collington Corporate Ctr. I Ltd. P'ship*, 358 Md. 296, 305, 747 A.2d 1219, 1223 (2000); *but cf. Spielman v. State*, 298 Md. 602, 607, 471 A.2d 730, 733 (1984) ("There is 'no absolute prohibition against retroactive application of a statute.' ") (quoting *State Comm'n on Human Relations v. Amecom Div.*, 278 Md. 120, 123, 360 A.2d 1, 4 (1976)). *Yorkdale*, as an exception to the general rule, provides for the retrospective application of changes to statutes that impact land use issues made during the course of litigation in land use and zoning cases.

In our Country's early jurisprudence, Chief Justice Marshall, writing for the United States Supreme Court, in *U.S. v. Schooner Peggy*, 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801),

---

11. In the forty plus years since *Yorkdale*, governmental entities have generally supported its applicability in land use cases. In those cases, however, the application of the *Yorkdale* rule restricted the rights of property owners. As far as we have discerned, the present case is the first instance where the *Yorkdale* rule might result in the expansion of a property owner's rights. Now, in this changed context, the governmental entity wants the Court to abandon *Yorkdale*.

laid the foundation for the retrospective application of changes in a statutory scheme to ongoing litigation. There, the Court was concerned with the disposition of spoils of war. A French schooner (the *Peggy)* had been captured by an American ship. The Court was faced with the question, in the midst of litigation, of determining who was entitled to possession of the *Peggy.* For guidance, the Court turned to a treaty. The provisions of the treaty involving the validity of the capture and resultant possession of captured ships had changed during the course of the litigation.[12] Chief Justice Marshall explicated:

> "It is in the general true that the province of an appellate court is only to enquire whether a judgment when rendered was erroneous or not. But if subsequent to the judgment and before the decision of the appellate court, a law intervenes and positively changes the rule which governs, the law must be obeyed, or its obligation denied."

1 Cranch at 110, 5 U.S. at 110.[13] The Court continued:

> "If the law be constitutional .... I know of no court which can contest its obligation. It is true that in mere private cases between individuals, a court will and ought to struggle hard against a construction which will, by a retrospective operation, affect the rights of parties, but in great national

---

**12.** The treaty entered into with France provided in pertinent part: "Property captured, and not yet *definitively* condemned, or which may be captured before the exchange of ratifications ... shall be mutually restored." *Schooner Peggy,* 1 Cranch at 107, 5 U.S. at 107, 2 L.Ed. 49. The Court found that the ship was "not yet *definitively* condemned" because litigation involving the possession of the schooner Peggy had not concluded. *Id.* at 108, 5 U.S. at 108.

**13.** This holding was specifically adopted by our Court in *Price v. Nesbitt,* 29 Md. 263, 266 (1868), where, after referring to the above language, we stated: "This doctrine has been recognized and settled by this court in *Atwell v. Grant,* 11 Md. [101,] 104 [(1857)]; *State v. Norwood,* 12 Md. [195,] 206 [(1858)]; *Keller v. State,* 12 Md. [322,] 326 [(1858)], and will be applied to the decision of this case." *Price,* interestingly, was a case relating to real property (i.e., ejectment), (generally zoning laws were not formulated until the early 20th century) but, the issue in which *Schooner Peggy* was adopted involved a change in law relating to removal questions.

concerns where individual rights, acquired by war, are sacrificed for national purposes, the contract, making the sacrifice, ought always to receive a construction conforming to its manifest import; and if the nation has given up the vested rights of its citizens, it is not for the court, but for the government, to consider whether it be a case proper for compensation. In such a case the court must decide according to existing laws, and if it be necessary to set aside a judgment, rightful when rendered, but which cannot be affirmed but in violation of law, the judgment must be set aside."

*Id.*[14]

In *Yorkdale*, the Court addressed a situation in which a property owner (the Yorkdale Corporation) had negotiated the reclassification of the zoning of its property in order to build an apartment building. Yorkdale also applied for a special exception and variance. The zoning commissioner granted Yorkdale's requests, with the exception of limiting the number of units in the apartment building, i.e., the density of the zoning. A neighboring property owner appealed the Board's decision to the Circuit Court. There, the question was "whether the zoning ordinances ... gave the zoning officials power to grant a variance as to density." *Yorkdale*, 237 Md. at 123, 205 A.2d at 270. The Circuit Court found that the then-current law did not authorize a variance in density. *Id.* at 124, 205 A.2d at 270. Yorkdale appealed to the Court of Appeals and, after argument, but before a decision was issued, a bill was passed by the county council modifying the law in

---

**14.** We recognize that the retrospective application in *Schooner Peggy* differs from the situation extant in the case *sub judice.* As Justice Stevens stated for the Supreme Court in *Landgraf v. USI Film Products*, 511 U.S. 244, 273, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994), "[o]ur application of 'the law in effect' at the time of our decision in *Schooner Peggy* was simply a response to the language of the statute[,]" referring to the language "not yet *definitively* condemned." *Schooner Peggy*, 1 Cranch at 109, 5 U.S. at 109, 2 L.Ed. 49. Nonetheless, our Maryland cases, in the context of land use and zoning issues, both preceding and following *Yorkdale*, have applied the "law in effect at the time" of the Court's decision.

respect to the granting of variances as to density. *Id.* Upon becoming aware of this event, the Court set the case for reargument.[15]

In reaching its decision, the *Yorkdale* Court first stated that:

> "Maryland consistently has followed the rule that 'an appellate court is bound to decide a case according to existing laws, even though a judgment rightful when rendered by the court below should be reversed as a consequence,' as Judge Markell, for the Court, repeated in *Woman's Club v. State Tax Comm.*, 195 Md. 16, 19, 72 A.2d 742 (or, it may be noted, even when a judgment wrong when rendered is made right by the change in the law). See also for this proposition that a change in the law after a decision below and before final decision by the appellate Court will be applied by that Court unless vested or accrued substantive rights would be disturbed or unless the legislature shows a contrary intent, *Keller v. State*, 12 Md. 322; *Day v. Day*, 22 Md. 530; *Gordy v. Prince*, 175 Md. 688, 7 A.2d 611; *Cockerham v. Children's Aid Society*, 185 Md. 97, 43 A.2d 197; and *Tudor Arms Apts. v. Shaffer*, 191 Md. 342, 62 A.2d 346." [16]

---

**15.** It is clear that the Court realized the importance of what it was doing. The Court had already heard the case, then directed that it be reargued based upon the possible retrospective applicability of a change in law. The *Yorkdale* rule was not an unintended holding relating to some larger issue. It was specifically considered by the Court and it was the major holding of the case. It is a holding that has stood the test of time.

**16.** *See Tudor Arms Apartments v. Shaffer*, 191 Md. 342, 351, 62 A.2d 346, 350 (1948) (In a landlord tenant case, the Court was "bound to decide [the] case according to existing laws."); *Cockerham v. Children's Aid Soc'y* 185 Md. 97, 43 A.2d 197 (1945) (In a habeas corpus proceeding for child custody, the Court decided the case according to the law existing at the time of argument.); *Gordy v. Prince*, 175 Md. 688, 7 A.2d 611 (1939) (per curiam) (In an income tax case, the Court applied an intervening decision of the United States Supreme Court.); *Day v. Day*, 22 Md. 530, 539 (1865) (In a land use case concerning a patent to land, the Court followed the reasoning in *Schooner Peggy*, stating: "It is proper, however, to refer to another well settled rule, which clearly

*Yorkdale,* 237 Md. at 124, 205 A.2d at 271. In discussing several zoning cases in which this rule had been applied, the *Yorkdale* Court stated:

"It would seem to follow from the decisions in *Banner [v. Home Sales Co. D.,* 201 Md. 425, 94 A.2d 264 (1953) ], *Lake Falls [Ass'n v. Board of Zoning Appeals of Baltimore County,* 209 Md. 561, 121 A.2d 809 (1956) ] and *Grau [v. Board of Zoning Appeals of Baltimore County,* 210 Md. 19, 122 A.2d 824 (1956) ] [17] that an applicant for rezoning to a more intense use of his property, who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the actions below."

*Yorkdale,* 237 Md. at 126, 205 A.2d at 272.

Applying this reasoning to the case, and after analyzing the legislative intent of the county in its enactment of the new bill and determining that there was no evidence that the bill was not to be subject to retrospective application, the *Yorkdale* Court held that the change in the zoning law had made the case decided under the old law moot. Because the amended law had come into effect during the course of litigation (i.e., while the appeal was pending and before a final judgment) the

---

leads to the same results, and that is, that we are bound to decide according to existing laws, even though a judgment, rightful when rendered by the court below, should be reversed as a consequence."); *Keller v. State,* 12 Md. 322 (1858) (In a criminal case, the Court held that a party cannot be convicted after the law under which he may be prosecuted has been repealed, though the offence may have been committed before the repeal, and the same principle applies where the law is repealed or expires pending an appeal or writ of error from the judgment of an inferior court.).

17. *See Grau v. Board of Zoning Appeals of Baltimore County,* 210 Md. 19, 122 A.2d 824 (1956) (Rezoning case, in which appeal was dismissed as moot because the property in question was rezoned again during the course of litigation.); *Lake Falls Ass'n v. Board of Zoning Appeals of Baltimore County,* 209 Md. 561, 121 A.2d 809 (1956) (same); *Banner v. Home Sales Co. D.,* 201 Md. 425, 94 A.2d 264 (1953) (same).

Court applied it retrospectively and dismissed Yorkdale's appeal. *Yorkdale*, 237 Md. at 133, 205 A.2d at 276.

Following the Court's decision in *Yorkdale*, we have affirmed those principles in relation to land use and zoning cases several times. In *Mandel v. Board of County Comm'rs of Howard County*, 238 Md. 208, 214, 208 A.2d 710, 714 (1965), the property owners "had applied to the Board to use their respective properties for high-rise apartments under the zoning regulations then existing." During the course of litigation, the pertinent zoning regulations were changed to disallow high-rise apartments. Applying the *Yorkdale* rule, the Court decided against the property owners and held that:

> "[T]his case is to be determined under the law as it now exists, that the appellants had not secured a final decree establishing their rights to use their properties for the use permitted under the former classification, that they had no vested rights, and that the change in the regulations is not invalid because it eliminates the proposed use."

*Mandel*, 238 Md. at 215, 208 A.2d at 714. Additionally, the Court stated that:

> "[I]t is clear that the Board, as a legislative body, if its action is otherwise in accordance with law, can validly change a zoning regulation, even though the effect of its action is to eliminate any inchoate rights, which property owners may have asserted in pending appeals from adverse administrative determinations under the pre-existing regulations."

*Id.* at 216, 208 A.2d at 715. Furthermore, "[u]nder the *Yorkdale* rule, the Board's legislative act, if otherwise valid, eliminated any rights which the appellants had to use their property for high-rise apartments under the pre-existing zoning regulations." *Mandel*, 238 Md. at 217, 208 A.2d at 715–16.

In *Marathon Builders, Inc. v. Montgomery County Planning Board*, 246 Md. 187, 227 A.2d 755 (1967), we addressed the impact of a change to the overall zoning ordinance during the course of litigation. After referencing the holding in *Mandel*, we stated:

"Certainly if such a change in classification has the effect of extinguishing existing rights during the pendency of an appeal involving the exercise of rights under a former classification, *a fortiori* a change in classification as a result of the passage of a comprehensive rezoning ordinance would have at least the equal effect of terminating any rights unexercised as of the effective date of the change in classification. This Court has made frequent declarations in zoning cases that courts are bound to decide cases according to existing laws. *Yorkdale v. Powell,* 237 Md. 121, 205 A.2d 269 (1964)."

*Marathon Builders,* 246 Md. at 194, 227 A.2d at 758.

In *Springloch Area Citizens Group v. Montgomery County Board of Appeals,* 252 Md. 717, 723, 251 A.2d 357, 360 (1969), citing to *Yorkdale* and *Mandel,* we stated: "[T]his Court is bound to decide a zoning case according to the laws existing at the time the decision is rendered unless vested rights have intervened. . . ." And, in *Dal Maso v. Board of County Comm'rs for Prince George's County,* 264 Md. 691, 694, 288 A.2d 119, 121 (1972), we stated that "we have held that a zoning case must be decided upon the law applicable at the time the case is before us, in the absence of intervening vested rights. . . ."

We had further occasion to address this issue in *Anne Arundel County v. Maragousis,* 268 Md. 131, 299 A.2d 797 (1973). The Maragousises had purchased a piece of property that was subject to a rezoning after their purchase. They brought an action in the Circuit Court and then appealed that verdict to this Court. After the case had been appealed, but prior to any decision being issued, the County amended the zoning ordinance. We stated:

"It has consistently been our policy to consider zoning cases on the state of the substantive law as it exists when the case is argued before us, *Dal Maso v. Board of County Comm'rs,* 264 Md. 691, 694, 288 A.2d 119 (1972); *Mandel v. Board of County Comm'rs,* 238 Md. 208, 215, 208 A.2d 710 (1965); *Yorkdale Corporation v. Powell,* 237 Md. 121, 124–

28, 205 A.2d 269 (1964),[18] and *compare Springloch Area Citizens Group v. Montgomery County Board of Appeals,* 252 Md. 717, 723, 251 A.2d 357 (1969). The amendment of [the statutes] marked the opening of an entirely new ball game, because the uses permitted by [the new statutes] were obviously much wider in scope."

*Maragousis,* 268 Md. at 139, 299 A.2d at 802. The County also conceded that some of the uses allowed under the rezoning had changed. We continued, stating that, "[s]ince neither this concessum nor [the new Bill] was before the lower court, the whole picture has been drastically altered." *Id.* at 140, 299 A.2d at 802. As a result of this determination and the *Yorkdale* rule, we remanded the case for reconsideration under the new law.

█ *Yorkdale* and its progeny have never been overruled.[19] They are still good law and are determinative in evaluating whether, in a land use or zoning case, a change in statutory law taking place during the course of a litigated issue should have retrospective application. As discussed *supra,* we shall consider zoning cases based upon the law as it exists at the time the case is before us.

The respondents argue that, after the Court's decision in *Washington Suburban Sanitary Commission v. Riverdale Heights Volunteer Fire Co.,* 308 Md. 556, 520 A.2d 1319 (1987), *Yorkdale* is no longer viable. We disagree. Before we discuss *Riverdale* directly, we look to *Janda v. General Motors Corp.,* 237 Md. 161, 205 A.2d 228 (1964). The *Janda* opinion was issued by the Court of Appeals on the same day as *Yorkdale* and penned by the same judge. Thus, there can be

---

**18.** "A different rule is applicable to procedural changes, *Luxmanor Citizens Ass'n, Inc. v. Burkart,* 266 Md. 631, 644–45, 296 A.2d 403 (1972)." *Anne Arundel County v. Maragousis,* 268 Md. 131, 139 n. 3, 299 A.2d 797, 802 n. 3 (1973). The present case concerns changes in reference to the substance of the law.

**19.** Like the Rule in Shelley's Case, which pre-existed *Wolfe v. Shelley,* 1 Co. Rep. 93b, 76 Eng. Rep. 206 (C.P.1581), the so called *Yorkdale* rule had been applied prior to the Court's decision in *Yorkdale.* *See* footnotes 16 and 17.

little argument that the Court rendered the opinions without a realization of their full effect.

In *Janda*, we addressed a change in the State's unemployment law. There, a number of employees were denied unemployment insurance benefits for a week in January of 1963. Those employees appealed the denial to the Board of Appeals, which, on August 21, 1963, affirmed the initial denial. The facts of the case show that there was a collective bargaining agreement between the employees and General Motors in effect from September 20, 1961, through August 31, 1964. During the course of the litigation, a statute governing unemployment insurance benefits in 1961, was repealed and reenacted in 1963. The 1963 statute specifically provided that benefits to be paid under a contract in force prior to the reenactment should be continued. The *Janda* Court stated, in pertinent part:

"Many of the reasons that led us to conclude that the Legislature intended in 1961 to make extra pay in lieu of vacation a bar to benefits lead us to conclude the 1963 act operates to remove that bar where the allowance in lieu of vacation is paid by the employer under and during the term of a written contract in effect on December 6, 1962, and the 'normal practice' of the employer was not to grant a vacation with pay. December 6, 1962, was the day the 1961 act first took effect (it having been in suspended animation since June 1, 1961, its stated effective date, because it had been put to referendum). Prior to that day extra pay in lieu of vacation had not been a bar to benefits. We think the 1963 Legislature, by expressly making December 6, 1962, the critical date, manifested a clear and unmistakable intent that extra pay allowances in lieu of vacation, paid under a contract in force on that day, should continue not to be a disqualification for unemployment benefits so long as the contract then currently in force continued, whether or not the time of separation from employment came before June 1, 1963, the effective date of the 1963 act."

237 Md. at 171, 205 A.2d at 234. *Janda* clearly did not involve a land use or zoning issue, and the Court found that the

changed statute specifically provided that the pre-existing contract continue to be in force.

In reaching its decision, however, the *Janda* Court described various rules "formulated by the courts to aid in determining whether a statute is to be applied retrospectively or prospectively." 237 Md. at 168, 205 A.2d at 232. Pertinent to our discussion, the Court stated in its fourth rule [20] that:

> "(4) A statute which affects or controls a matter still in litigation when it became law will be applied by the court reviewing the case at the time the statute takes effect although it was not yet law when the decision appealed from was rendered, even if matters or claims of substance (not constitutionally protected), as distinguished from matters

---

**20.** The other rules extant in *Janda* are as follows:

"(1) 'Ordinarily a change affecting procedure only, and not substantive rights, made by statute ... applies to all actions [and matters] whether accrued, pending or future, unless a contrary intention is expressed.' *Richardson v. Richardson*, 217 Md. 316, 320, 142 A.2d 550, and cases cited. (2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect:

' * * * unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.' *State Tax Comm. v. Potomac Power Company*, 182 Md. 111, 117, 32 A.2d 382.

(3) A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law. Aside from the disinclination of legislative bodies and courts to make a law operate on past events or transactions, the limitations on retroactive laws are only those which affect all legislation and, if the Legislature intends a law affecting substantive matters to operate retrospectively and the law does not offend constitutional limitations or restrictions, it will be given the effect intended. See 2 Sutherland, *Statutory Construction*, Sec. 2201 (3rd Ed.1943), and *Diamond Match Co. v. State Tax Comm.*, 175 Md. 234, 200 A. 365."

*Janda*, 237 Md. at 168–69, 205 A.2d at 232–33.

procedural or those affecting the remedy are involved, unless the Legislature intended the contrary. See *Yorkdale Corp. v. Powell,* 237 Md. 121, 205 A.2d 269, and cases cited...." [21]

*Janda,* 237 Md. at 169, 205 A.2d at 233.

Respondents contend that *Riverdale* overruled this portion of *Janda,* thereby overruling *Yorkdale.* That is simply not the case.

In *Riverdale,* an Act was passed, effective July 1, 1983, providing fire companies with immunity for civil liability arising out of allegedly tortious conduct in the course of performing their duties. In 1980, a fire had occurred, damaging an apartment house in Riverdale. The fire insurer paid for the loss and then sued the Washington Suburban Sanitary Commission (WSSC), alleging that WSSC was negligent in failing to maintain the fire hydrant closest to the fire. In other words, when fire fighters arrived to combat the blaze, they attempted to utilize that particular fire hydrant, but it proved to be dry, failing to provide any water. This allegedly caused a delay that resulted in an increase in damages and the resultant loss due to the fire. In September 1984, after the 1983 Act became effective, WSSC filed a third-party complaint against the Riverdale Heights Volunteer Fire Co., Inc. ("Fire Co."), alleging that Fire Co. knew that the fire hydrant was inoperable and therefore, any negligence on the part of WSSC was secondary. Fire Co. moved to dismiss, asserting immunity under the 1983 Act.

The Circuit Court granted Fire Co.'s motion to dismiss. WSSC appealed to the Court of Special Appeals, arguing that the Circuit Court was erroneous in its retrospective application of the Act. This Court issued a writ of certiorari prior to consideration by the Court of Special Appeals.

First, it must be noted that *Riverdale* clearly did not concern a land use or zoning issue. The case involved a

---

**21.** Also citing *Gordy v. Prince,* 175 Md. 688, 7 A.2d 611 (1939) (per curiam) and *Day v. Day,* 22 Md. 530 (1865).

statute pertaining to fire companies' immunity from civil liability in tort actions. In determining whether such a statute should be applied retrospectively, the Court stated:

"As a general rule, statutes are presumed to operate prospectively and are to be construed accordingly. *See, e.g., Rigger v. Baltimore County,* 269 Md. 306, 305 A.2d 128 (1973); *Kastendike v. Baltimore Association for Retarded Children, Inc.,* 267 Md. 389, 297 A.2d 745 (1972); *State Farm Mutual Automobile Insurance Co. v. Hearn,* 242 Md. 575, 219 A.2d 820 (1966); *but cf. Spielman v. State,* 298 Md. 602, 471 A.2d 730 (1984) (there is no absolute bar to retrospective application). The presumption against retrospectivity is rebutted only where there are clear expressions in the statute to the contrary. *State Farm Mutual Automobile Insurance Co. v. Hearn,* supra. Moreover, even where permissible, retrospective application is not found except upon the plainest mandate in the legislation. *Bell v. State,* 236 Md. 356, 204 A.2d 54 (1964). The rationale underlying the general rule provides that retrospective application, which attempts to determine the legal significance of acts that occurred prior to the statute's effective date, increases the potential for interference with persons' substantive rights. *State Commission on Human Relations v. Amecom Division of Litton Systems,* 278 Md. 120, 360 A.2d 1 (1976)."

*Riverdale,* 308 Md. at 560–61, 520 A.2d at 1321–22. The Court then addressed *Janda,* which Fire Co. had raised in arguing for the retrospective application of the 1983 Act.

The Court, initially, correctly distinguished *Janda,* stating that, "[u]nlike the instant case, *Janda* involved a statute the terms of which clearly reflected a retroactive intent." *Riverdale,* 308 Md. at 562, 520 A.2d at 1322. The Court then observed that there was writing, which it described as dicta, in *Janda,* referring to the four rules discussed *supra,* and in particular to the fourth rule. The *Riverdale* Court elaborated: *"Janda'*s collection of rules was not intended to restate the universe of then Maryland law on prospective or retrospective application of statutes." *Riverdale,* 308 Md. at 563, 520 A.2d

at 1323. The Court proceeded to state that "[t]his Court has never applied the fourth rule in *Janda* to decide a case." *Id.* at 563, 520 A.2d at 1323.

As *Yorkdale, Mandel, Marathon Builders, Springloch, Dal Maso, Maragousis,* and the cases cited in *Yorkdale* indicate, that was only correct to the extent of actual statements in reference to *Janda* in the determination of subsequent cases.[22] In the case *sub judice,* respondents' reliance on this state-ment—placed out of the context of the rule's basis in *Yorkdale* and other cases—is unavailing. It is evident that the *Janda* Court cited to *Yorkdale* in stating the fourth rule. *Janda,* 237 Md. at 169, 205 A.2d at 233. And, as we have said, the two opinions were written by the same judge and filed on the same day. Thus, it is clear that the holdings are related to each other. The Court obviously knew what it was doing in *York-dale* and *Janda.* Moreover, as discussed *supra,* there are a significant number of cases which follow and affirm *Yorkdale* in the context of land use and zoning cases and cases prior to *Yorkdale* supporting the concept.[23] It is evident that this Court has applied the fourth rule in *Janda,* but generally only in the context of land use and zoning cases. After discussing several non-land use and non-zoning cases, the *Riverdale* Court went on to state that "[b]ecause it is inconsistent with the general body of Maryland law on the subject, the fourth rule in *Janda* is disapproved." *Riverdale,* 308 Md. at 565, 520 A.2d at 1324.

The *Riverdale* Court ultimately declined to retrospectively apply the 1983 Act, and therefore, held that Fire Co. was not

---

**22.** The fourth rule in *Janda,* as we have indicated, was based on *Yorkdale.* *Yorkdale*'s rule, even at the time of *Riverdale,* had been continuously and frequently cited. Shepardizing *Yorkdale* and *Janda* indicate that *Yorkdale* is still good law.

**23.** We reiterate that *Yorkdale* and its progeny apply to land use and zoning cases. Thus, even if the statute in *Janda* did not clearly reflect a legislative intent as to retrospective application (though it did), the fourth rule may have been distinguishable from the current *Yorkdale* rule in allowing retrospective application of the statute in that instance, because it was not a land use case like its companion, *Yorkdale.*

immune from liability. In doing so, the Court applied the general rule that the Act was presumed to operate prospectively and found that there was no evidence of legislative intent that the statute be applied otherwise. *Id.* at 568–69, 520 A.2d at 1326. Specifically, the Court stated that "[t]he foregoing review demonstrates that under the law of Maryland statutes ordinarily are construed to operate prospectively, absent a clear legislative intent to the contrary." *Id.* at 568, 520 A.2d at 1325.

The *Riverdale* Court was correct in the above statement. *Ordinarily,* we do construe statutes to operate prospectively, absent a clear legislative intent to the contrary. The *Riverdale* Court, however, did not address *Yorkdale,* the exception to the general rule. The *Riverdale* Court's "disapproval" of what it termed dicta from *Janda* (a non-land use and non-zoning case) does not affect the *Yorkdale* rule.[24] Any disapproval of *Janda*'s fourth rule by the *Riverside* Court was made in the context of the statute at issue in that case, which

---

24. See also *Enviro–Gro Tech. v. Bockelmann,* 88 Md.App. 323, 341 n. 17, 594 A.2d 1190, 1199 n. 17 (1991), where the Court of Special Appeals stated:

"Janda's fourth holding was expressly 'disapproved' in *Riverdale Heights Fire Co., supra,* 308 Md. 556, 520 A.2d 1319, a case involving the application of an immunity statute. *Yorkdale* and the zoning and other cases we have cited were not overruled in *Riverdale Heights,* although the court's reasoning in rejecting *Janda*'s 'fourth rule' causes us some concern. We note, however, that it was somewhat limited to that factual situation, thus apparently not applicable to dissimilar factual cases. Due to the long and consistent body of law from *Schooner Peggy* to *Yorkdale* and subsequent thereto, we perceive that the *Yorkdale* rule still applies in zoning cases generally, and this case specifically, until overruled or disapproved by higher authority, or by the legislature."

The Court of Special Appeals expressly recognized that *Riverdale* did not overrule the *Yorkdale* rule. *But see Wharf at Handy's Point, Inc. v. Dep't of Natural Res.,* 92 Md.App. 659, 674 n. 8, 610 A.2d 314, 321 n. 8 (1992) ("The proposition for which we cited *Yorkdale* in *Enviro–Gro* was that in zoning cases involving changes in *substantive* law, not affecting vested rights and absent a contrary legislative intent, a 'change in the law after a decision below and before final decision by the appellate court will be applied by that Court.' ") (citing *Enviro–Gro,* 88 Md.App. at 339, 594 A.2d at 1198 (quoting *Yorkdale,* 237 Md. at 124, 205 A.2d at 271.)).

had no relation to land use and zoning issues. The exception to the general rule still stands. In land use and zoning cases, the law shall be applied as it is in effect at the time of argument.[25] Therefore, respondents' reliance on *Riverdale* is misplaced.

---

**25.** A current zoning treatise supports this position, albeit based in part on Maryland cases:

" **§ 27.38. Effect of amendment during pendency of appeal**

"In proceedings to review a decision of a board of adjustment, the reviewing court, in most jurisdictions, will apply the law as it exists at the moment of decision in the reviewing court....

"If a zoning ordinance has been amended between the moment of administrative action or decision and the moment of review, the amendment will apply. Thus, where a restrictive amendment was adopted after the application for a permit, the reviewing court will judge the administrative decision on the basis of the amendment. If the affect of the amendment is to render the case moot, the reviewing court will dismiss the appeal.

"The amendment will be applied even though it was adopted after an inferior court reviewed the decision in issue, [citing *Yorkdale* in footnote] and in spite of the fact that the amendment is not part of the record...."

4 *Anderson's Am. Law. Zoning* § 27.38 (4th ed.1997, 2006 supp.) (footnotes omitted). *See Atlantic Richfield Co. v. Bd. of Supervisors,* 40 Cal.App.3d 1059, 115 Cal.Rptr. 731 (1974); *West Coast Advertising Co. v. City and County of San Francisco,* 256 Cal.App.2d 357, 64 Cal.Rptr. 94 (1967); *McCallum v. Inland Wetlands Comm'n,* 196 Conn. 218, 223, 492 A.2d 508, 510 (1985) ("The majority rule, and the rule followed in Connecticut, is that the zoning law or regulation in effect at the time of the decision of a court is controlling as opposed to that in effect when the proceedings were instituted or when the administrative agency entered its decision upon the application."), *superceded by statute,* Connecticut General Statute § § 8–2h and 22a–42e (2006), *as recognized in Protect Hamden/North Haven from Excessive Traffic and Pollution, Inc. v. Planning and Zoning Comm'n of Town of Hamden,* 220 Conn. 527, 540, 600 A.2d 757, 765 (1991); *Johnson v. Zoning Bd. of Appeals,* 2 Conn.App. 24, 475 A.2d 339 (1984), *superceded by statute,* Connecticut General Statute §§ 8–2h and 22a–42e (2006), *as recognized in Protect Hamden/North Haven,* 220 Conn. at 540, 600 A.2d at 765; *Holladay v. City of Coral Gables,* 382 So.2d 92 (Fla. Dist. Ct.App.1980); *Outdoor Systems, Inc. v. Cobb County,* 274 Ga. 606, 608, 555 S.E.2d 689, 691 (2001) ("An appellate court must apply the law as it exists at the time of its judgment and may, therefore, even reverse a judgment that was correct at the time it was rendered, where, as here, the law has changed in the meantime and no vested rights are impaired."); *Nuuanu Neighborhood Assoc. v. Dep't of Land Utilization,* 63 Haw. 444, 630 P.2d 107 (1981); *City and County of Honolulu v. Midkiff,* 62 Haw. 411, 616 P.2d 213 (1980); *O'Hare International Bank v. Zoning Bd. of*

■ Respondents urge that *Holland v. Woodhaven Building and Development, Inc.*, 113 Md.App. 274, 687 A.2d 699 (1996), demonstrates that zoning cases are not to be distinguished from the general rule of prospective application. We disagree. When language in a Court of Special Appeals opinion is in conflict with language in an opinion of this Court, the language of this Court's opinion is controlling. The Court of Special Appeals in *Holland* dealt with the issue of a party's standing to challenge a ruling of a zoning board. Factually, the protesting party filed an appeal to the Board. The Board dismissed that appeal due to lack of standing. The protesting party then appealed to the Circuit Court, and while that appeal was pending, an ordinance was enacted specifically providing for such standing. Addressing the argument that

---

*Appeals,* 37 Ill.App.3d 1037, 347 N.E.2d 440 (1976); *U.S. Cellular Corp. v. Bd. of Adjustment of City of Des Moines,* 589 N.W.2d 712, 717 (Iowa 1999) ("The rule in most states is that 'a reviewing or appellate court must decide a case based on the zoning law as it exists at the time of the court's decision.'") (quoting Edward H. Ziegler, *Rathkopf's The Law of Zoning and Planning* § 26.02[2][a], at 26–3 to 26–4 (4th ed.1996)); *State ex rel. Jacobson v. New Orleans, Dept. of Safety & Permits,* 166 So.2d 520 (La.App.1964); *Thomas v. Zoning Bd. of Appeals,* 381 A.2d 643 (Me.1978); *Caputo v. Board of Appeals,* 330 Mass. 107, 111 N.E.2d 674 (1953); *Town Pump, Inc. v. Bd. of Adjustment of City of Red Lodge, Montana,* 292 Mont. 6, 971 P.2d 349 (1998); *Kruvant v. Mayor & Council of Township of Cedar Grove,* 82 N.J. 435, 414 A.2d 9 (1980), *but see Pizzo Mantin Group v. Twp. of Randolph,* 137 N.J. 216, 235, 645 A.2d 89, 99 (1994) (Retroactive application is not automatic, "A court must balance the municipality's zoning interest against the developer's degree of reliance on the old statute and its entitlements of right[,]" appearing to recognize that "vesting" may negate the retrospectivity of a new statute.); *Cathedral of the Incarnation v. Glimm,* 61 N.Y.2d 826, 473 N.Y.S.2d 972, 462 N.E.2d 149 (1984); *Mascony Transport & Ferry Service, Inc. v. Richmond,* 49 N.Y.2d 969, 428 N.Y.S.2d 948, 406 N.E.2d 803 (1980); *Dyl & Dyl Dev. Corp. v. Building Dept.,* 31 A.D.2d 818, 298 N.Y.S.2d 45 (N.Y.App.Div.1969); *Lunden v. Petito,* 30 A.D.2d 820, 292 N.Y.S.2d 757 (N.Y.App.Div.1968); *Atlantic Beach Towers Constr. Co. v. Michaelis,* 21 A.D.2d 875, 251 N.Y.S.2d 794 (N.Y.App.Div.1964); *Atlantic Refining Co. v. Zoning Bd. of Appeals,* 14 Misc.2d 1022, 180 N.Y.S.2d 656 (N.Y.Sup.Ct.1958); *Keiger v. Winston–Salem Bd. of Adjustment,* 281 N.C. 715, 190 S.E.2d 175 (1972); *Szymanski v. City of Toledo,* 18 Ohio App.2d 11, 47 Ohio Op.2d 12, 246 N.E.2d 368 (1969); *Shender v. Zoning Bd. of Adjustment,* 388 Pa. 265, 131 A.2d 90 (1957); *Linda Dev. Corp. v. Plymouth Twp.,* 3 Pa.Cmwlth. 334, 281 A.2d 784 (1971).

the ordinance should be applied retrospectively, the intermediate appellate court stated:

> "Without discussing *Janda* or *Riverdale Fire Co.*, appellants assert that '[i]n *zoning* cases, Maryland law is absolutely clear [that "a]n appellate court must apply the law in effect at the time a case is decided, provided that its application does not affect intervening vested rights." ' We see no reason to distinguish zoning cases in this manner. The Court of Appeals could have limited its holding in *Riverdale Fire Co.* to exclude zoning cases, but it did not so limit that case. *See, e.g., Arundel Corp. [v. County Comm'rs of Carroll County]*, 323 Md. [504,] 509–10, 594 A.2d 95 (applying *Riverdale Fire Co.* in a zoning case).[26]"

*Holland,* 113 Md.App. at 286, 687 A.2d at 705–06. Obviously, the viability of the *Yorkdale* rule was not "absolutely clear" at the time of the *Holland* decision. We now, however, deem to make it so. Our discussion *supra,* serves to distinguish *Yorkdale* from *Riverdale,* thus, in the case *sub judice,* the Court of Special Appeals' ruling in *Holland* does not control.

Furthermore, in *Powell v. Calvert County,* 368 Md. 400, 795 A.2d 96 (2002), decided subsequent to both *Riverdale* and *Holland,* we reaffirmed the principles of *Yorkdale.* There, the granting of a special exception for the outdoor storage of excavating material was at issue. The landowner, respondent, in that case was granted a special exception by the Calvert County Board of Appeals in February of 1997, over the protests of his neighbors. The neighbors, petitioners, appealed to the Circuit Court, which affirmed the decision of the Board. The neighbors then appealed to the Court of Special Appeals. In December of 1998, while the appeal was pending, the Board amended the pertinent zoning ordinance to disallow outdoor storage of excavating material, repealing the section under which the landowner had initially obtained approval from the Board for his special exception. In April of 1999, the Court of Special Appeals issued an unreported opinion (*Powell*

---

**26.** *Arundel Corp.* did not involve a change in substantive law, it concerned a change to procedure, as did, arguably, *Holland.*

*I* ), reversing the Circuit Court's decision, vacating the Board's decision, and remanding the case back to the Board. The intermediate appellate court's decision was based upon a "lack of evidence result[ing] in a deficient record from which the court was unable to determine if the Board's decision was based on substantial evidence." *Powell,* 368 Md. at 405, 795 A.2d at 99.

In September of 1999, the Board again considered the landowner's application for a special exception. His application was granted, with the Board applying the law as it existed at the time of the original hearing (February 1997), not in accord with the new ordinance enacted in December of 1998. The neighbors appealed that decision to the Circuit Court. The Circuit Court upheld the Board's decision based upon a finding that the landowner had established a vested right. The neighbors again appealed to the Court of Special Appeals, which affirmed the relevant decision of the Board (*Powell II* ).

We first looked at the Court of Special Appeals' decision in *Powell II, Powell v. Calvert County,* 137 Md.App. 425, 435–36, 768 A.2d 750, 756 (2001), where the court found that, under *Holland,* the amendment to the zoning ordinance *by its terms* operated retrospectively. *Powell,* 368 Md. at 407–08, 795 A.2d at 100. We then went into an in-depth discussion of whether the landowner had obtained vested rights, ultimately holding that:

> "In instances where there is ongoing litigation, there is no different 'rule of vested right' for special exceptions and the like. Until all necessary approvals, including all final court approvals, are obtained, nothing can vest or even begin to vest. Additionally, even after final court approval is reached, additional actions must sometimes be taken in order for rights to vest."

*Id.* at 409, 795 A.2d at 101. We found that the landowner in *Powell* had not obtained a vested right because he had "never used his property for the storage of materials under a valid

special exception." *Id.* at 412, 795 A.2d at 103.[27]   We then, discussing *Ross v. Montgomery County,* 252 Md. 497, 250 A.2d 635 (1969), cited *Yorkdale* and *Mandel* in support of this "ongoing litigation" reasoning and for the rule that, in cases involving land use and zoning, we apply the law as it "now exists," absent a vested right.   *Powell,* 368 Md. at 412–13, 795 A.2d at 103.   In *Powell,* we reiterated the language of *Yorkdale,* that one "who has been successful before the zoning authorities and the circuit court does not acquire a vested or substantive right which may not be wiped out by legislation which takes effect during the pendency in this Court of the appeal from the sections below."   *Powell,* 368 Md. at 413, 795 A.2d at 103 (quoting *Ross,* 252 Md. at 503, 250 A.2d at 639 (quoting *Yorkdale,* 237 Md. at 126, 205 A.2d at 272)) (quotation marks omitted).

Respondents, in the case *sub judice,* attempt to characterize *Powell*'s citations to *Yorkdale* and *Mandel* as only affirming the "proposition that mere zoning approval does not create vested rights."   Respondents assert that, "[i]f *Yorkdale* was still good law, the Court had the opportunity to so state.   It did not."   The converse, however, is true.   We did not have to state that *Yorkdale* is good law, because it was and still is. *Yorkdale* has never been overruled and our citation to it in *Powell* is evidence of that.   Had *Yorkdale* been overruled, we would have had to distinguish it.   Thus, not only does it stand for the proposition elucidated in *Powell,* that approval pending ongoing litigation does not create a vested right, but also for the rule that we reiterate today, that in the case of land use and zoning issues, appellate courts generally are bound to apply the law (whatever its source) relating to those issues as it exists at the time of their decision.

Respondents cite to several additional non-land use and non-zoning cases in support of their argument that we should not retrospectively apply a change in statutory law: *State*

---

**27.**   The litigation involving whether he would ultimately be entitled to a special exception was ongoing through, and until the time of, our decision.

*Ethics Comm'n v. Evans,* 382 Md. 370, 855 A.2d 364 (2004); *Allstate Ins. Co. v. Kim,* 376 Md. 276, 829 A.2d 611 (2003); *Langston v. Riffe,* 359 Md. 396, 754 A.2d 389 (2000); *Informed Physician Services, Inc. v. Blue Cross & Blue Shield of Md., Inc.,* 350 Md. 308, 711 A.2d 1330 (1998); *Morgan v. Cohen,* 309 Md. 304, 523 A.2d 1003 (1987). None of these cases dealt with land use or zoning and, thus, they do not affect the viability of the *Yorkdale* rule as applicable to land use and zoning cases.

Respondents also argue that the law in question, §§ 17.300(g) and 17.307(d) of the Howard County Code, is not part of Howard County's zoning ordinance or regulation, but part of the Howard County Animal Control Law. The zoning law, however, impliedly incorporates those relevant provisions of the Animal Control Law. The Animal Control Law was applied by the Board in making its land use determination as to whether Frisky's was entitled to a special exception under the zoning ordinance. It was applied in a land use context.[28] Therefore, it was a determinative provision in a zoning context, and we will apply it retrospectively under *Yorkdale.* On remand, the Board shall apply the current law.

### IV.  Conclusion

For the aforementioned reasons, we reaffirm the *Yorkdale* rule that a substantive change in relevant statutory law that takes place during the course of the litigation of a land use or zoning issue shall be retrospectively applied by appellate courts. We reverse the decision of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND THE CASE TO THE CIRCUIT COURT FOR HOWARD COUNTY WITH INSTRUCTIONS TO REMAND THE CASE TO THE BOARD**

---

**28.** Obviously, the Animal Control Law may apply in other contexts unrelated to land use issues. If so, *Yorkdale* may not apply. When, however, an ancillary statute becomes a part of the resolution of a land use issue, such as present here, *Yorkdale* may apply.

OF APPEALS FOR FURTHER PROCEEDINGS NOT IN-
CONSISTENT WITH THIS OPINION.  COSTS IN THIS
COURT AND IN THE COURT OF SPECIAL APPEALS
TO BE PAID BY THE RESPONDENTS.

WILNER, J., Dissents.

Dissenting Opinion by WILNER, J.

With respect, I dissent.  As Judge Cathell's opinion points
out, there is, indeed, case law to support the conclusion that
zoning cases have been treated somewhat differently than
other kinds of cases in determining the effect to be given to a
change in statutory law while a matter is pending in court.  I
therefore cannot fault the Court's reliance on those cases in
continuing to carve out a special exception—no pun intend-
ed—for zoning, or even broader land use, cases.

My problem is that I can find no practical or jurisprudential
basis for such a distinction, and the Court offers none.  The
issue is always presented when a legislature changes a law
whether that change, from and after its declared effective
date, should apply to matters already in litigation when the
law takes effect.  On the one hand, as Chief Justice Marshall
observed in the *Schooner Peggy* case, there is a certain
anomaly in a court's failure to apply the law that is in effect
when it decides the case, for the effect of that is to render a
judicial decision that is not supported by existing law.  On the
other hand, there is a certain unfairness in applying laws
retroactively, at least where, as part of its legitimate declara-
tion of public policy, the legislative body has not clearly
indicated an intent that they be so applied.  In both commerce
and personal dealings, people and entities necessarily rely on
existing law to guide their conduct and their transactions, and
that necessary and permissible reliance—that certainty—is
seriously jeopardized when the rules are changed in the
middle of the game.

The general rules that we have adopted attempt to balance
those considerations.  As an overarching principle, subject
only to Constitutional imperatives, we have left it to the

legislative body to determine whether statutory changes should be applied to matters already in litigation. If the legislature declares that a new law should be so applied and there is no Constitutional impediment to such application, we respect the legislative judgment and apply the new law as the legislature intended. The problem arises when there is no such expressed intent—when all that we have is an effective date of the law and nothing more. In those situations, we have generally applied the principle that, if the change is o ne of procedure only, we will apply the new law even if doing so would produce a different result than not doing so. If the change affects substance, however, we will not apply the new law, at least if doing so would produce a different result. In that circumstance, we do not permit the rules to be changed mid-stream.

Those distinctions are not perfect; they can, and sometimes do, result in what may appear to be an injustice in a given case, and it is not always clear whether a change is merely procedural or also affects substance. But, on the whole, the distinctions are reasonable, and they have a solid jurisprudential basis. When we start carving out categorical exceptions to them, however, both their rationality and their jurisprudential basis are eroded. Why just zoning or land use cases? What is so special about them? They involve property, but only real property. Is real property somehow more, or less, sacred than other kinds of property, including contractual rights? I would be more inclined to bless the Court's opinion in this case if it offered any legitimate reason for drawing a distinction between zoning cases and other kinds of cases. Unfortunately, however, it does not. I would therefore overrule the prior case law relied upon by the Court and affirm the judgment of the Court of Special Appeals.